## Case No. 7,181.

### JAMES v. GORDON et al.

[1 Wash. C. C. 333.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1806.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

WASHINGTON, Circuit Justice. It is a great inaccuracy, to say, that the legal title was in Drumgold. The warrant merely gave him an equitable title, and not that, unless he paid the money; and the questions are, whether the warrant was applied for by him, or by Peters & Clark; and whether this is not a proper case to leave to the jury, to presume that the warrant was really taken out by those who paid the money, and who merely used the name of Drumgold as a nominal person, a practice common in this state, where one man takes out many warrants? The warrant, issued in 1763, is paid for in 1765, by Peters & Clark, who had it executed and returned; and it is received for their use. The defendant does not pretend to claim under Drumgold, or to show a subsisting right in any person under him; and the plaintiff appears in court, with the original warrant as one of his title papers. The jury may certainly presume, that the name of Drumgold was merely used by Peters and Clark, the real grantees. Motion overruled.

The defendant read an agreement, between George Crogham on the one part, and William Peters, J. Warden and A. James, assignees of Clark, in which is recited a deed formerly made by Crogham to Peters and Clark, of a number of tracts of land, to secure a debt from Crogham, which was then proved; and stipulating for a re-conveyance, on certain terms, of particular parts of the land, to be ascertained and determined by arbitrators. A copy of the award, from the records of one of the courts, attested by the proper officer, was now offered; and objected to, because not a paper directed by law to be recorded. The law of 1715, authorizes the recording of all deeds and conveyances, of, and concerning lands, or whereby they may be in any manner affected, to be acknowledged by the grantors, or proved by two witnesses; or if they be dead, or cannot be had, their handwriting may be proved, or if not, then that of the grantors. In this case, the signatures of the arbitrators were proved, and of one of the witnesses; but it does not appear that the witness could not be had. The objections were: 1st. That this was not a deed; 2d. If it were,

the other witness should have proved it, or it should appear that he could not be had.—Answer. That the defendants do not claim under this award, but it was a paper put on record by Peters & Clark. That this is a paper connected with the agreement to which it refers, and it does affect land.

BY THE COURT. The law clearly relates to deeds, and this is not a deed; of course an attested copy given by an officer, who is not directed by law to record it, is not evidence. If the original were lost, or in possession of the adverse party, the contents might be proved by a witness; but the attestation of the clerk is not evidence.

The defendant offered a paper in evidence, signed by Richard Peters, as attorney for William Peters.

BY THE COURT. You must produce the power of attorney, under which the agent acted.

The defendant then offered a deed, dated in 1774, from the commissioners for selling lands, on which the taxes had not been paid, to the person under whom the defendant claimed; he being the highest bidder. Objected to, because it did not appear that assessors had been appointed; and in cases of this kind, the greatest strictness is required, in proving that every requisite of the law was complied with. The law required the assessment to be made by the court and district assessors, and it should be shown that the latter were regularly appointed; and a number of strong cases were read, decided in the supreme court, in support of this doctrine, as applied to sales for non-payment of taxes, and other similar cases.

BY THE COURT. This point may be reserved till we have gone through the opening; because the rule laid down, that every delegated authority, particularly to deprive men of their property, contrary to the rules of the common law, should appear to be strictly pursued; yet it may be an important question, whether a defendant, who has for a great number of years been in quiet possession, under such sales, may not call in the aid of presumptions, which would not be allowed to a person out of possession.

The defendant then offered a deed, dated in 1787, signed by the commissioners, for another part of the land in question, which concludes thus, "as witness our hands, and to which we have caused our common seal to be affixed." There are three seals in the upper margin of the deed. The grantors acknowledged the deed, in court, to be their act and deed. This was objected to, because it was sealed with a common seal; whereas the law directs a deed to be given by the commissioners, under their hands and seals. Instead of affixing their individual seals, they put a common seal, as if they were a corporate body. Another objection to the deed was, that the laws, preceding the first sale, did not authorize the commissioners to convey, though it authorized them to sell.

The words are nearly as follows, "that if the taxes are not paid within a certain time, the commissioners shall sell so much, as may be necessary to raise the sum due, and upon all sales made by the sheriff or coroner as aforesaid, the said sheriff, &c. shall convey." So that whether the sheriff is to convey, or the commissioners, it is casus omissus. The deed was directed to be read without prejudice.

The principal questions in the cause were, 1st, whether in fact the land sold, and in the possession of the defendants, is the land mentioned in the warrant granted to F. Drumgold, and surveyed for him; or whether it is not the land granted to James Maze, in whose name it was sold? If the former, then the plaintiff produced the receipts for the taxes, due at the time of the first sale. 2d. Objection, that the assessors were nominated by the commissioners, instead of being elected by the freeholders, as the law of 1758 directed; and that the conveyance was made by the commissioners, without authority. These objections went to the first sale and conveyance in 1774. 3d. As to the sale and conveyance in 1787, it was admitted, that, by the law of 1702, the commissioners are to convey, but they are to do so under their hands and seals; and this conveyance is made under their common seal. Many decisions by the supreme court of this state, were referred to, in which it was determined, that the party claiming lands under these sales, was obliged to prove the regularity of the proceedings in every point, and even the notice of the commissioners was deemed necessary, in the case of Weester v. Cameron [unreported].

WASHINGTON, Circuit Justice (charging jury). Perplexed as this case has been rendered, by the mode in which it has been conducted, it now appears to turn within a very narrow compass, and to depend upon the ascertainment of a single fact, which will be left to you; that is, whether the land now in possession of the defendants, and which they claim under deeds from the commissioners of taxes, is the land surveyed in the name of Francis Drumgold or not. If it be not, then the plaintiff cannot succeed in this action; because the foundation of his title is a warrant, taken out in the name of Francis Drumgold, in 1763. The consideration money was paid by Peters & Clark, in 1765, for a survey of 516¼ acres in the same year, and returned and accepted into the office, in 1770, for the use of the assignees of Daniel Clark, under whom the lessor of the plaintiff deduces his title. Now, this being the title, if the defendants are not in possession of this land, the plaintiff must fail, whether the defendants have title or not. On the other hand, if this be the land surveyed for Francis Drumgold, then the plaintiff is clearly entitled to recover, because the only title of the defendants is derived from a conveyance from the commissioners; who acknowledged in the deed itself, that the land so conveyed had been sold, as the land of J. Maze, for non-payment of taxes. I therefore put out of the question all the other objections made to the legality of the sale, since it is clear, from the deed itself, that it was advertised, and in every respect treated as J. Maze's land; and therefore the notice required by law to be given, was in this case worse than omitted, since it misdescribed the land. To prove that this is the land granted in the name of Francis Drumgold, the plaintiff relies upon the survey itself, which corresponds expressly in courses, distances, calls of adjoining lands, and quantity, to a quarter of an acre. Besides this, he has the evidence of Mr. Taylor, a witness, whose credit has not been impeached, who swears positively to the fact. Against this is opposed, a draught or diagram, of a number of tracts of land, made in consequence of a warrant of resurvey, ordered by the board of property in 1788, at the request of Doctor Smith, who was tenant in common with Peters & Clark, in a great number of warrants, issued to them in 1763, in different names; of which that to Francis Drumgold was one. To this warrant of resurvey, is annexed a list of those warrants, amongst which, are two to James Maze, one to Francis Drumgold adjoining Maze; and the one in question, adjoins this other tract. The surveyor was directed to lay down these tracts, to show their interferences, and what parts had been sold for taxes. Upon the diagram thus returned, the land in question is marked for James Maze's land, and two tracts adjoining it are marked for Francis Drumgold.

Upon this piece of evidence, the following considerations occur to me, which I deem it my duty to submit to the jury. 1st. This resurvey was made twenty-three years after the original survey was made; and as the surveyor does not inform us by what evidence he was guided in locating these several tracts of land, its accuracy may well be doubted. 2d. It does not appear, that a survey for James Maze, or of Francis Drumgold's other tract, ever was made; for they are not mentioned in the original list of surveys returned in 1770, and accepted for the use of the assignees of Clark; and it is therefore probable, that these were lost warrants. 3d. The tract laid down on this paper, as James Maze's, corresponds with the survey originally made for Francis Drumgold, in courses, distances, calls of adjoining tracts, and in quantity, to a quarter of an acre; whereas that laid down for Francis Drumgold, has no resemblance to the original survey in any of these particulars, and is more than 100 acres short in quantity. 4th. G. Woods, who received in 1774 and 1776, the taxes due on Francis Drumgold's land, is admitted by both sides to have been well acquainted with these lands; and in that re-

ceipt, he calls it Francis Drumgold's land, and distinguishes it by the precise quantity, to wit: of 516¼ acres. The jury then must decide this fact, whether the land sold was for Francis Drumgold or not: if they are satisfied that it was, their verdict must be for the plaintiff; if otherwise, then for the defendant.

Verdict for plaintiff.