LEWIS (MERCHANT v.). See Case No. 9,-437.

## Case No. 8,328.

### LEWIS v. MEREDITH.

[3 Wash. C. C. 81.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1811.

LAWS RELATING TO TITLES TO LAND — LEVY ON LAND.

1. The law of Pennsylvania relative to titles to land under application, warrants, surveys, locations, payment of purchase money, and the rules established in the land office, relative thereto, by which such titles are ascertained and determined.

[Cited in Lanning v. London, Case No. 8,074; Herron v. Dater, 120 U. S. 474, 7 Sup. Ct. 625.]

2. Land, held under a special warrant, may be levied upon under a fieri facias, and sold under a venditioni exponas; but land held under an indescriptive warrant, cannot be so levied upon.

[Cited in Dubois v. Newman, Case No. 4,-108.]

[This was an action at law by the lessee of Lewis, against Meredith.]

Plaintiff's title: An application by E. Slocum, 12th of February, 1793, for 400 acres of land, in Luzerne county, on the east side of Susquehanna, and the north side of Wyaloosing creek, about six miles from the mouth of the creek, and fifty perches from the creek; adjoining a manor line of William Penn on

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

the west, and lands of John Shee on the south, and vacant lands on the east and north. Also, twenty-nine other tracts, of 400 acres each, in the names of different persons, adjoining said tract of Slocum; the first of them, on the east of said tract, and the others adjoining and adjoiners. The purchase money was paid by Eddy for the above lands, 10th of June, 1794, and regular deeds made from the different applicants to Eddy, 5th of May, 1795. Warrants issued to the several applicants, dated as of the day of the application, which agree with the applications, except that in Slocum's, the leading warrant, the words, "and lands of John Shee," are omitted. These warrants were surveyed on the 13th of August, 1804, though different from the calls of the warrants, and were accepted 23d of August, 1805, into the land office. Under a fieri facias against Eddy, the sheriff returned that he had levied on two-thirds of thirty tracts of land, on Wyaloosing, Wysock and Rummer's field run, in Luzerne county, without any further description. A venditioni exponas issued, and the sheriff sold and conveyed to the lessor of the plaintiff, the thirty tracts of land, held under the above warrants, describing them. This conveyance was on the 10th of September, 1801.

Defendant's title: 11th of December, 1793, application by P. Smith, for 400 acres of land, on the waters of Wyaloosing, to be bounded on the east by land granted to P. Decker, by warrant of 3d of April, 1792, on the north, by land granted to T. Yerkes by warrant of 14th of March, 1793, and to extend south and west in the county of Luzerne. Also, twenty-five applications in different names, adjoining the former as the leader, and each other. The purchase money for the above twenty-six tracts, was paid by the defendant, on the 17th of January, 1794, and warrants issued, as of the 11th of December, 1793. In February, 1794, these warrants were put into the hands of a deputy surveyor to execute, who completed these surveys, from the 18th to the 25th of June, 1794, and returned them into the land office, in September, 1794. On the 12th of August, 1794, Eddy caveated the defendant, which was tried 6th of April, 1795, by the board of property, who determined that the defendant's surveys should be accepted, they being better described, the purchase money paid, and surveys made, before Eddy's warrants were put into the surveyor's hands to execute; and ordered a patent to issue. Eddy, within six months from the time this decision was made, brought his ejectment against the defendant for these lands, which was contested till 1804, when Eddy suffered a nonsuit. The plaintiff's survey covers the lands claimed by the defendant, under the twenty-six warrants; and about one or two years after the above nonsuit, this ejectment was brought.

Mr. Binney, for plaintiff, contended: 1. That an execution might well be levied on this land, before it was surveyed, and upon any contingent or equitable title. 3 Bin. 4; [Turner v. Fendall] 1 Cranch [5 U. S.] 134. 2. That it is no objection to the plaintiff's surveys, that the tracts are not in oblongs, as mentioned in the law, whose length is double the breadth; that law being only directory, and applying only in cases of lands located on water courses, or where third persons are concerned. 3. That the plaintiff's application is sufficiently certain, at least in four respects; and if not so, it is as certain as the defendant's, and more so, since his land as surveyed, is a considerable distance from Wyaloosing; and even if more precise, still his survey is worth nothing, as it appears in evidence, that the surveyor did not survey it on the ground, or run his lines so as to enclose any land. 1 Bin. 148; 3 Bin. 36, 114.

Messrs. Gibson and Tilghman, for defendant, contended: 1. That if the plaintiff ever had a title, he lost it by laches, in not paying the purchase money, and having his survey made in a reasonable time. 2 Smith, Laws Pa. p. 205. 2. That the plaintiff's application is uncertain, and did not apply to the defendant's land, and was not surveyed according to its calls, and could not be so surveyed. 3. After the decision of the board of property, the plaintiff's survey could neither be made nor accepted. 4. A levy cannot be made, on land merely claimed by an indescriptive warrant. 5. The board of property having decided the question, that decision is conclusive, under the 11th section of the act of 3d April, 1792, unless the plaintiff had recovered in an ejectment, brought within six months after. But he was nonsuited, and did not bring his second ejectment for more than a year after. In this case, it was proved and admitted, to be the custom in the land office, to allow a person, who has filed an application, to alter it as he pleases, at any time before the warrant issues; but, in that case, the application is considered to be made, as of the day the alteration is made, and the warrant is dated as of that day.

Mr. Ingersoll, in reply, contended, that the 11th section of the act of 3d April 1792 [3 Smith, Law Pa. p. 74], applied only to lands north and west of the Allegheny, Ohio, and Conewango creek, and not to this land; all the sections of the law, except the first, reducing the price of the lands, clearly refer to those lands; and therefore, the decision on the caveat is not conclusive. But, if it were, still it is not so, unless the decision of the court in the ejectment is on the title; and such must be the certificate, to authorize the patent issuing, but not if a nonsuit is suffered, as in this case, in consequence of the court countenancing the idea, that the plaintiff must prove the defendant in possession, contrary to the express provisions of this section, if it does apply.

WASHINGTON. Circuit Justice (charging jury). In stating to you the opinion of the

court on this case, we shall first consider the title of Eddy, under whom the plaintiff claims, and then tne title of the plaintiff. In order to a clear understanding of the principles on which this cause must be decided, it will be necessary to examine the different steps taken by Eddy, for the purpose of appropriating the land in question. On the 12th of February, 1793, he made an application to the land office. What is the extent to which this step carries the party, in acquiring a title? It is a declaration on his part, of an intention to make an appropriation. The state, on her part, impliedly agrees, that the applicant may obtain a title to the land specified in his application, upon the terms of his paying the purchase money, and proceeding regularly to complete that title, by having a survey made, and obtaining a patent. If the applicant specifies with sufficient certainty, the land he means to appropriate, the application is called a special one, and the warrant which he obtains is termed a special warrant. If he cannot, at the time he makes the application, designate the tract with convenient certainty, he obtains by his warrant a right to a certain quantity of land, to be fixed and located at a future day, by a survey, and this is called a general warrant. The former amounts to a location immediately; the latter, to a location when the survey is made and returned. After the application is made, it is expected that the applicant will proceed with all convenient speed, to pay the purchase money, which being done, the warrant to the surveyor issues, but not before; and though it bears date, as of the day of the application, it is, in fact, and in truth, a warrant of the day on which the money is paid. It is further expected, that he will, with reasonable diligence, proceed to perfect his title, by having a survey made. But, if he neglect to pay the purchase money, and take out his warrant, for any length of time, unless quickened by a special law, as in this case, his title, as between him and the state, is not jeoparded; because the state compensates herself for lying out of the money, by compelling him to pay interest. So, too, as between the state and the individual; the delay of the latter to make his survey, is no otherwise important, than as it may defeat the policy of the state, in having her lands settled and improved. But this is not important, if no other person wants to settle it. But, if another person applies for the same land, the case is entirely altered, and very different consequences result. The second applicant, has equal equity with the first, to appropriate this vacant land; and if he pays his money, and proceeds regularly and with due vigilance to perfect his title, he defeats the equity of the first applicant, and is entitled to a priority, because he pays his purchase money, and obtains a legal title to the land, which is a step towards promoting the political views of the state, in getting her vacant lands settled and improved. Since, then, the equity of the first applicant, may be defeated by his own neglect and the superior vigilance of the second applicant, in determining which of the two is entitled to a preference, the jury, where the application is special, must inquire and decide whether the first applicant has proceeded with due diligence to consummate his title; and in doing this, they must adopt some rational rule to guide their judgments. Can a postponement of payment of the purchase money, for sixteen months, and a delay in obtaining a survey for ten years, not accounted for, or palliated by any sufficient excuse, be considered as acts performed within a reasonable time? This is the question for the consideration of the jury. If not, then the plaintiff has lost the preference, which the priority of his application gave him.

2. But, what was the title of Eddy, independent of the objection noticed under the first head of our inquiry? what is the character of his application? If a special one, then it amounts to a location, from the time it is made, and will give him a title, unless he has lost it by unreasonable delay. A certain location is one which designates the land intended to be appropriated, so plainly, that subsequent applicants may know how to take up adjacent lands, without the danger of interference. We have heard, that a location may be certain, to a common intent, which must mean a location the reverse of one which is entirely uncertain. There is a clear distinction between a certain, or rather special location, accompanied by something in the description, which is in its nature uncertain, and one which from an incongruity in the description, is rendered altogether uncertain throughout, and which can equally be satisfied, by adhering to one part of the description or the other. In the former, that which is certain, cannot be vitiated by that which is uncertain. In the latter, all is uncertain. Thus, if the warrant calls to adjoin the lands of A. and B., and also of. C. and D., and it is impossible to fulfil the call; but either of the descriptions will answer; that is, it may be made to adjoin A. and B., or C. and D.; this we call an uncertain indescriptive warrant; because, if the claimant under it, can at his election adjoin his tract to the former, and abandon the latter description, for the same reason, he may adhere to the latter, and abandon the former. But, how is it possible for a subsequent applicant, to know which he may choose to adjoin, and how can he with any degree of safety, know how to locate the adjoining land? But, if the call had been for well established boundaries, but to be within a certain distance of some other point, or to include a particular spot, the latter description only is uncertain; for, until the survey is made, it must be mere conjecture, whether the lines will ex-

tend to the supposed places. In this case, a subsequent applicant, can be at no loss how to locate adjoining, and the uncertain description may be rejected.

In this case, the land surveyed for Slocum, corresponds with three of the descriptions in the warrant, beyond all question. It is about six miles from the mouth of the creek, about fifty perches from the creek, and is on the north side of it. And we think it corresponds with the fourth call; because, we agree with the plaintiff's counsel, that the land to be located is to be on the west of the manor line, and not the manor line on the west of it. But, then, it is utterly impossible to place it, so as to adjoin John Shee on the south, without removing the location to the south of the creek. Now, by removing the location to the south of the creek, as many of the calls of the warrant will be complied with, as by fixing it where the survey has placed it. For, it may be laid off six miles from the mouth, and fifty perches from the creek, adjoining the manor line on the west, and John Shee on the south. But, then, one of the calls must be disregarded, for it will then be on the south, instead of the north of the creek. Thus, if it be located on the north, the call to adjoin John Shee on the south, must be abandoned; and if it be placed on the south, the call to lie on the north, must be disregarded. But if it was in the election of the applicant, to adhere to the former, and reject the latter, he might with equal reason have adhered to the latter, and rejected the former. How, then, was it possible, for the defendant or any other person, to any intent whatever, to know where the prior application would be located, so as to enable him to apply for the adjacent lands? It is said, that the land as now surveyed, lies on the south-west of John Shee, which is a reasonable compliance with this call. But even this is not the fact. No part of the location can be laid to the south-west of John Shee, without running in considerably upon the manor land. This uncertainty, however, in the application, may be remedied by the survey. But, then, the title of Eddy, in relation to one, who, in the mean time, had regularly obtained a title to the land, covered by the subsequent survey of Eddy, must date from the survey, because the survey of an uncertain warrant, can never, by relation to the date of the application or warrant, oust one, who, in the mean time, has regularly acquired a title to the same land. This, necessarily, brings into view the title of the defendant; and it is contended on the part of the plaintiff, that his survey was irregularly and illegally made, the surveyor not having gone round the boundaries of the land, so as to enable him to make a plat of the same, and the evidence of a person deputed at one time, to make this survey, which is to this effect, is relied upon. The fact may possibly

be so. But one thing is clear, and that is, that a survey, with every appearance of accuracy, as if every tract had been regularly run, was returned by the surveyor, sworn to, was contested sixteen years ago, before the board of property, by Eddy, and then determined to be regular, and as such was accepted. Now, it would violate every principle of equity, to admit Eddy, who, to say the best for his title, had only an equitable estate, with full notice of the defendant's survey, to defeat by his survey, made nine years afterwards, the title of the defendant, thus supported by the decision of the board of property, upon the mere ground of irregularity in the survey, even if the fact were clearly made out. But, it is said, that the plaintiff, is a purchaser for a valuable consideration, and is not bound by the notice to Eddy. But still he was the purchaser of a naked equity—was a pendente lite purchaser—and what is more, was affected by constructive notice, which the return of survey gave him. This point, then, is conclusive, in favour of the defendant.

3. As to the title of the plaintiff. If the doctrine endeavoured to be maintained, under the second head, be correct, then, this land could not be levied upon, and of course, could not be sold and conveyed by the sheriff. For, whilst it is conceded by the defendant, that lands held under a special warrant, may be levied upon and sold, it is with equal candour admitted on the other side, that land held under an indescriptive warrant, cannot be. And surely nothing can be more obvious. Whether such a warrant may be taken in execution, is a point not necessary to be decided. If it can, nothing is taken but the evidence of a right to land somewhere, and to be afterwards designated by survey. But land cannot be levied on, because, until it is surveyed, it exists only in idea—it has no locality—no real existence. This execution was levied on thirty tracts of land; and even if these were the thirty tracts actually intended, still, they were not the property of Eddy, any more than any other tracts of land. This point, therefore, is also against the plaintiff.

The plaintiff consented to suffer a nonsuit.