# HERRON v. DATER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF PENNSYLVANIA.

Argued January 19, 20, 1887.—Decided March 7, 1887.

In Pennsylvania a warrant and survey, and payment of the purchase money, confer a legal estate as against all but the Commonwealth, together with a legal right of entry which will support ejectment; and this action of ejectment may be maintained by the owner who paid the purchase money, without any conveyance from the person in whose name the application was made and the warrant issued.

The plaintiff in an action of ejectment in Pennsylvania, to prove title, offered in evidence certified copies of (1) an application numbered 12,969, in the names of six separate persons for six separate tracts of four hundred acres each, adjoining lands of A; (2) of old purchase voucher, dated November 26, 1793, also numbered 12,969, in the same names, with like quantities of land also adjoining lands of A; (3) of old purchase blotter dated June 14, 1794, also numbered 12,969, at the side of which were

written the words: "A gen'l rec't wrote," and in the body of which, after the number and date and the name of A, were the words "6 W'r'ts of 400 a's Am't, 2400 a's 50s p. c't p'd specie ch.  £ 60 = =.  Fees 60s p'd, rem'r charge of 168 D's.  Rec't d'd." *Held*, (1) That these documents were competent evidence to prove the payment of the money and by whom it was paid; (2) That the money for the six tracts was all paid in full by A; (3) That he was the owner of the warrant by virtue thereof; (4) That notwithstanding the differences between the date of the application and warrant (November 16, 1793), and the date of the receipt of the purchase money (June 14, 1794), the issue of the warrant was, in view of the settled practice in Pennsylvania, evidence of the payment of the purchase money sufficient to establish *prima facie* a legal title in A, which was not liable to be overcome by a subsequent patent from the Commonwealth, purporting on its face, but not otherwise proved, to be connected with the warrant and survey, and under which no claim of title had been asserted for more than seventy-five years.

When the Orphans' Court in Pennsylvania has jurisdiction of a subject matter, its orders, judgments, and decrees therein cannot be impeached collaterally.

The plaintiff in ejectment in Pennsylvania having proved title to the premises by establishing a warrant and survey and payment of the purchase money perfected by return of the deputy surveyor into the land office, evidence on the part of the defendant of a subsequent patent from the Commonwealth, with no proof of its connection with the warrant and survey except recitals to that effect in it, is inadmissible.

EJECTMENT.  Plea: The general issue.  Judgment for plaintiff.  Defendant sued out this writ of error.  The case is stated in the opinion of the court.

*Mr. R. P. Allen* for plaintiffs in error.  *Mr. A. H. Dill* and *Mr. John G. Reading, Jr.*, were with him on the brief.

*Mr. John W. Ryon* and *Mr. James Ryon* for defendants in error.  *Mr. Samuel Linn* was with them on the brief.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an action of ejectment brought by the defendants in error in the Circuit Court of the United States for the Western District of Pennsylvania to recover possession of a tract of land situated in Northumberland and Columbia counties, containing about two hundred and thirty acres.  There was a

verdict and judgment in favor of the plaintiffs below, to reverse which this writ of error is brought.

Both parties claim title under the Commonwealth of Pennsylvania. It appears from the bills of exception taken during the progress of the trial that the plaintiffs put in evidence a certified copy of a document called an application, No. 12,969, as follows:

"William Elliott applies for four hundred acres of land on a branch of Roaring Creek, adjoining Dr. Thomas Ruston's lands, in Catawissa Township, Northumberland County.

"Joseph Tyson applies for four hundred acres of land lying one mile north of a road leading from Reading to Sunbury, adjoining Dr. Thomas Ruston's other land, in Catawissa Township, in North'd County.

"William Shannon applies for four hundred acres of land lying one mile north of a road leading from Reading to Sunbury, adjoining other lands of Dr. Thomas Ruston in Catawissa Township, North'd County.

"Lewis Walker applies for four hundred acres of land lying one mile north of a road leading from Reading to Sunbury, adjoining Dr. Thomas Ruston's other lands, in Catawissa Township, North'd County.

"Nathaniel Brown applies for four hundred acres of land on a branch of Roaring Creek, adjoining Dr. Thomas Ruston's lands, in Catawissa Township, North'd County.

"Ebenezer Branham applies for four hundred acres of land on a branch of Roaring Creek, adjoining Dr. Thomas Ruston's lands, in Catawissa Township, North'd County."

Also a certified copy of old purchase voucher No. 12,969, as follows:

"26 November, 1793. Certified copy of old purchase voucher No. 12,969. Joseph Tyson, 400 a's lying one mile north of a road leading from Reading to Sunbury, adjoining Dr. Thomas Ruston's other land, in Northumberland County.

"William Elliott — 400 a's situate on a branch of Roaring Creek, adjoining Dr. Thomas Ruston's other land, in Catawissa Township, — said county.

"Lewis Walker — 400 a's lying one mile north of a road

leading from Reading to Sunbury, adjoining Dr. Thomas Ruston's other land, in said county.

"William Shannon — 400 a's lying one mile north of a road leading from Reading to Sunbury, adjoining Dr. Thomas Ruston's other lands, in said county.

"Ebenezer Branham — 400 a's on a branch of Roaring Creek, joining Dr. Thomas Ruston, in said county.

"Nathaniel Brown — 400 a's on a branch of Roaring Creek, joining land of Dr. Thomas Ruston, in said county.

"Amount, £60 — interest from date thereof.

"[On the side]: A gen'l rec't wrote."

The plaintiffs also offered in evidence a copy of old purchase blotter No. 12,969, as follows:

"1794,       12969.
June 14.       Dr. Ruston.   6 W'r'ts of 400 a's Am't,
        2400 a's, 50s p. c't p'd specie ch.,      £60 = =

        Fees 60s p'd, rem'r charge of 168 D's.

"Rec't d'd."

To this the counsel for the defendants objected on two grounds: 1st, that the warrant to Lewis Walker appearing to be dated November 26, 1793, it was not competent to prove payment of the purchase money by Ruston on June 14, 1794; and, 2d, that if any title whatever accrued to Ruston, it would be but a resulting trust, as the plaintiffs did not propose to follow it with any evidence showing a conveyance of the legal title to Ruston or those claiming under him, or any possession of the land by him or them, or the bringing of any action of ejectment to recover it within twenty-one years from the date of the warrant. The objections were overruled, and an exception taken.

The plaintiffs also put in evidence a copy of the warrant to Lewis Walker, dated the 26th of November, 1793, for 400 acres adjoining Dr. Thomas Ruston's other lands; and a copy of a survey for Lewis Walker, dated the 22d of October, 1794, in pursuance of the warrant, containing 371¼ acres. The survey was followed by a certified copy of the return made by William Gray, deputy surveyor, into the land office, show-

ing that on February 23, 1795, he returned to the land office the Lewis Walker survey for 371¼ acres. Warrants and surveys of five other tracts were introduced in evidence in connection with the warrant and survey of the Lewis Walker tract, being the same tracts of land which are mentioned in the application and purchase voucher. The plaintiffs then traced title into Nicholas Le Favre by virtue of a judgment against Thomas Ruston in 1796, and levy on lands of the defendant Ruston, including the Lewis Walker tract, and a sale and conveyance of the same to Le Favre by a marshal's deed. Nicholas Le Favre having died, his will was admitted to probate on the 12th of August, 1815, on which day William R. Smith took out letters of administration with the will annexed. A schedule attached to the will of the testator, of his lands in Pennsylvania, included the Lewis Walker tract for 371¼ acres. In 1836, William R. Smith, the administrator with the will annexed of Nicholas Le Favre, petitioned the Orphans' Court of Philadelphia for an order to sell real estate to pay the debts of the decedent. By further proceedings upon said application in the Orphans' Court of Northumberland County, where a portion of the lands of Le Favre were located, a decree of sale was obtained, and the Lewis Walker tract, among others, was sold on the 9th of May, 1837, to Joseph Brobst, as the property of Nicholas Le Favre. A deed was made to Brobst for the land, and the sale confirmed in Northumberland County, where the lands were located. By sundry mesne conveyances the title of Brobst was vested in the plaintiffs below.

There was evidence tending to show that the lands in controversy were wild and unimproved until 1864, when the parties through whom the plaintiffs claim title took actual possession thereof, and improved the same by the erection of a house and sawmill, and put to work a corps of men for the purpose of proving the coal veins. These operations and expenditures were continued for a period of about eighteen months, at a cost of between $40,000 and $50,000, when the work was suspended as not being profitable, but possession was maintained through agents and tenants until 1875, when the defendants took forcible possession, claiming title.

The defendants below objected to the admission in evidence
of the records from the Orphans' Court of Philadelphia,
showing the proceedings resulting in the sale of the lands of
Nicholas Le Favre to Joseph Brobst, on the ground that the
debts of the decedent, as set forth in the petition of the
administrator, to pay which the order of sale issued, were
barred by the statute of limitations and their lien extin-
guished, by reason of which it was claimed that the Orphans'
Court had no jurisdiction to grant the order. The objection
was overruled, and an exception taken.

There was also evidence introduced by the plaintiffs, which
was objected to, tending to show payment of taxes by those
under whom the plaintiffs claim.

The defendants below offered in evidence on their part an
application of Daniel Reese, Lewis Walker, and others, filed
in the land office November 26, 1793, indorsed "Ent'd by
Wm. Lane for Daniel Rees;" also the warrant from the Com-
monwealth to Lewis Walker for 400 acres, dated November
26, 1793; also the survey to Lewis Walker made October 22,
1794, in pursuance of the warrant of November 26, 1793, de-
scribing the tract in dispute; and then offered a certified copy
of a patent from the Commonwealth of Pennsylvania to Peter
Grahl, dated April 12, 1797, for the same tract, which patent
contained a recital to the effect that Lewis Walker, by deed
dated November 27, 1793, had conveyed the said tract with
the appurtenances to Peter Grahl. Counsel for the plaintiffs
below objected to the introduction in evidence of this patent
on the ground that Dr. Ruston held a prior title to the land
from the Commonwealth. This objection was sustained, the
court refusing to allow the patent to be read to the jury, to
which the defendants excepted.

The defendants below then renewed the offer of the patent
to Peter Grahl for the land in dispute, in connection with an
offer to prove a connected chain of title from Peter Grahl to
themselves, to be followed by proof that they took actual
possession of the land in dispute in 1875, paid taxes by re-
deeming the land from tax sales, made improvements, expended
large sums of money in opening coal mines, and have ever

since held actual possession of the land; and also that Nicholas Le Favre, who purchased the alleged title of Dr. Ruston at marshal's sale on October 11, 1803, received notice in October, 1814, of the title of Peter Gràhl under the patent to him, and that the plaintiffs below, when they purchased at sheriff's sale in 1872, received notice of the same facts. This offer was rejected, and an exception duly taken.

The court below also refused to allow the defendants to read in evidence certain parts of the return of William Gray, deputy surveyor, to the commissioners of Northumberland County, made in 1796, other parts of which had been read by the plaintiffs below, in order to show that the taxes paid by Dr. Ruston on the lands which he did in fact own in the same county, and paid into the same office during the same time, were paid to or by a different person than the taxes paid on the land in dispute; and to show that there was another tract surveyed by the Commonwealth in the same locality and in the same county in the name of Lewis Walker as warrantee, which was claimed by Dr. Ruston. These offers were also rejected by the court, to which ruling the defendants excepted.

The court below charged the jury, among other things, as follows:

"The plaintiffs put in evidence a certified copy of an ancient paper, dated November 26th, 1793, on file in the land office, designated as old purchase voucher No. 12,969, and in connection therewith a certified copy of an entry, under date of June 14th, 1794, from the old purchase blotter in the land office. These documents were offered to show, and they are evidence tending to show, that Dr. Thomas Ruston was the owner of the Lewis Walker warrant, and paid to the Commonwealth the purchase money for said tract of land."

And also:

"The plaintiffs have shown that by sundry mesne conveyances the title which Nicholas Le Favre thus acquired became vested in them prior to the bringing of this action. In connection with their paper title the plaintiffs gave evidence tending to show that for many years they and those under whom

they claim asserted title to the land and paid taxes thereon without any hostile claim being set up against them until the year 1875, when the defendants took possession. If the evidence on the part of the plaintiffs is believed by the jury, it makes out a *prima facie* case for the plaintiffs, and they are entitled to your verdict upon this branch of their title."

To these charges the defendants excepted. These several rulings of the court are now assigned for error.

In the case of *Sims* v. *Irvine*, 3 Dall. 424, which was an ejectment for land lying in Pennsylvania, decided by this court in 1799, it was said that, in that state, "payment, or, as in this case, consideration passed, and a survey, though unaccompanied by a patent, gave a legal right of entry which is sufficient in ejectment. Why they have been adjudged to give such right, whether from a defect of chancery powers or for other reasons of policy or justice, is not now material. The right once having become an established legal right, and having incorporated itself as such with property and tenures, it remains a legal right notwithstanding any new distribution of judicial powers, and must be regarded by the common law courts of the United States in Pennsylvania as a rule of decision."

The case of *Evans* v. *Patterson*, 4 Wall. 224, 230, decided in 1886, was similar. In that case Mr. Justice Grier, delivering the opinion of the court, said : "The case cannot be made intelligible without a brief notice of the very peculiar land law of Pennsylvania. The proprietors of the province, in the beginning, allowed no one man to locate and survey more than three hundred acres. To evade this rule in after times, it was the custom for speculators in land to make application in the names of third persons, and, having obtained a warrant, to take from them what was called a "deed-poll" or a brief conveyance of their inchoate equitable claim. Pennsylvania, until of late years, had no courts of equity. Hence, in an action of ejection, the plaintiff might recover without showing a legal title. If he had a prior inchoate or equitable title, either as trustee or *cestui que trust*, he might recover. The courts treated the applicant, or warrantee, as trustee for the party who paid the purchase money, or paid even the surveying fees; for the

purchase money, under the location or application system, was not paid at the time, and sometimes never. When the state succeeded to the title of the proprietors, the application system was abandoned, and warrants were granted on payment of the purchase money for the number of acres for which his warrant called. Hence, where the claimant of the warrant was unable to show his deed-poll, he might recover by showing that he paid the purchase money; that the warrantee whose name was used was, therefore, trustee for him. And an ejectment might also be maintained in the name of the warrantee, although he had no beneficial interest in the land, and had no knowledge of the institution of the suit. See *Campbell* v. *Galbreath,* 1 Watts, 78, and also *Ross* v. *Barker,* 5 Watts, 391, which was decided on the title now in question."

It is equally well established that the action of ejectment may be maintained upon a warrant and survey by the owner who paid the purchase money, without any conveyance from the person in whose name the application was made and the warrant issued. *Brown* v. *Galloway,* Peters C. C. 291; *Willink* v. *Miles,* Peters C. C. 429. It was said by Mr. Justice Washington in *Huidekoper* v. *Burrus,* 1 Wash. C. C. 109, 113, that "the person whose name appears on the warrant is considered as merely a nominal grantee, and a trustee for the person who pays for the warrant and has it executed;" stating, as a matter of fact in the history of the practice of the state, that "wherever one person takes out many warrants he borrows the names of certain persons, no matter who they are." See also *Griffith* v. *Tunckhouser,* Peters C. C. 418; *James* v. *Gordon,* 1 Wash. C. C. 333; *Copley* v. *Riddle,* 2 Wash. C. C. 354. This doctrine is established as the law of Pennsylvania by many decisions of the Supreme Court of that state. In *Duer* v. *Boyd,* 1 S. & R. 203, 210, that court said: "For above fifty years past lands held by warrant and survey, without patents, have been considered as the legal estate in England, subject to the liens of judgments, courtesy, dower, and other incidents of real property.

In *Maclay* v. *Work,* 5 Binney, 154, 158, it is said: "An estate held by warrant and survey, or other imperfect title, without

patent, is of a singular nature. In many, and indeed in most respects, it is considered as a legal estate against all persons but the commonwealth. It is subject to the same laws of descent, devise, and conveyance as the legal estate. Tenancy by the courtesy and in dower are attached to it. An ejectment may be supported on it." And in *Gingrich* v. *Foltz*, 19 Penn. St. 38, 40 [*S. C.* 57 Am. Dec. 631], it is said: "In Pennsylvania a warrant and survey, attended with payment of the purchase money, is to be considered, as against all but the commonwealth, in the same light as the *legal* estate in England, and is not to be distinguished, as to the mode of conveying, entailing, and barring entails, from estates *strictly legal.* . . . If the warrant, survey, and payment of the purchase money constitute the *legal title*, it is impossible to comprehend how the commonwealth can, by any act whatever, after she has parted with that title, prejudice, much less extinguish, it."

Upon this view of the law, it appears from the record that the plaintiffs below proved a legal title to the Lewis Walker tract in controversy in Dr. Thomas Ruston. The old purchase voucher No. 12,969, offered in evidence, shows that the purchase money for the six tracts described was paid by one person; and the receipt, being a copy from the old purchase blotter, also No. 12,969 to correspond, shows that the owner of the warrants, by virtue of the payment of the purchase money, was Dr. Ruston.

Counsel for the plaintiffs in error seek to read the abbreviations in that extract from the old purchase blotter as showing that the purchase money had not been paid in full, but we think it otherwise sufficiently appears, not only on the face of the receipt itself, but also from the statement on the margin of the old purchase voucher, that a general receipt had been given, corroborated by the fact that the warrants were actually issued.

A point is made on behalf of the plaintiffs in error that the issue of the warrant cannot be considered as evidence of the payment of the purchase money, because it is dated prior to the date of the receipt taken from the old purchase blotter, the warrant being dated the 26th of November, 1793, and the

receipt the 14th of June, 1794. This, however, is explained by the practice, known to have existed, that while a warrant was never issued except after the payment of the purchase money, yet it was dated as of the date of the entry in the old purchase voucher, which was the authority given to the surveyor to locate the land, the warrant being subsequently issued so as to relate back to that date.

In *Brown* v. *Galloway*, Peters C. C. 291, Mr. Justice Washington said: A warrant for land " according to long and uniform practice, is dated as of the day of the application, although it is retained until the purchase money is paid, when, and not before, it issues to the party." To the same effect is *Lewis* v. *Meredith*, 3 Wash. C. C. 81.

The competency and value of the two documents from the old purchase voucher and the old purchase blotter, to prove the fact of the payment of the purchase money, and by whom it was paid, are stated by the Supreme Court of Pennsylvania, in the case of *Cliphant* v. *Ferren*, 1 Watts, 57. It is there said that these entries were made by John Keble, who was chief clerk in the Receiver General's Office. Prior to 1823, proof of the payment of the purchase money was made by the production of the original receipt, or the testimony of Keble during his lifetime, and after his death, proof of his handwriting and entry in these books. In 1823, however, by a statute passed during that year, the books themselves, and copies from them, were made *prima facie* evidence.

The matter is thus explained by Judge Huston in his Essay on the History and Nature of Original Titles to Land in the Province and State of Pennsylvania, Charles Huston, p. 335:

" Even on warrants where money was paid, there was sometimes difficulty as to who was the owner. The warrant, being in a name different from that of the claimant on its face, proved nothing. Where the owner, when he took out his warrant, took a receipt for his purchase money and preserved it, this often decided the question of ownership, and it became usual for a plaintiff to recover on such a receipt, without producing any conveyance from the person whose name was used in the warrant. But, where the owner either took no receipt,

or it was lost or mislaid, the ownership must be proved by other means. The common books of the land office charged the warrantee with the land and credited him with the payment of the money. When it became necessary to pay the money before you got the warrant, and while John Keble was chief clerk in the Receiver General's Office, he kept an account of who paid the money on every warrant sealed in that office. The entry, however, is not easily understood, except by those acquainted with the office. Every application was numbered successively, as they were handed in, from one up to near twenty thousand. Some of these applications were for a single tract, and many for more than one hundred, the last written on a single sheet of paper, or several sheets attached together. On each of these was marked the date when filed, and the name of the man who payed the money always appeared. When you applied for a warrant, there were marks by which you could refer to and find the application, and from the application and its number and date, you could find the entry in John Keble's blotter, and there see who paid the purchase money. The right to many tracts has been ascertained by searching as here mentioned; and a copy of that blotter under seal of office, is now evidence in a court of justice, by a particular act of assembly. So careful was John Keble that if the person who paid the money told him by whom it was sent, that also appeared in the blotter." Vide, also, *Campbell* v. *Galbreath*, 1 Watts, 70.

There is nothing in the case of *Strimpfler* v. *Roberts*, 18 Penn. St. 283 [*S. C.* 57 Am. Dec. 606], cited and relied upon by the plaintiffs in error, inconsistent with the foregoing. In that case the plaintiffs in the ejectment were permitted to prove that Benson, under whom they claimed, had paid the purchase money, and they did so by the blotters, vouchers, &c., as in the present instance; and it was admitted and decided in that case that such proof established a *prima facie* title in them, but one, however, which might be overcome by proof of the fact that Benson, who appeared to have paid the purchase money, had done so, not on his own behalf, but as agent for others; and that fact

being made to appear, it was held that a patent issued to the assignee of the warrantee conveyed a superior legal title. The conclusion is summed up by Chief Justice Black, in the opinion of the court, as follows (p. 302): "That where a warrant is issued to one person and the purchase money is paid by another, and the patent is afterwards taken out by the nominal warrantee, the right of him who paid the purchase money is gone, unless he takes possession of the land or brings ejectment to recover it within twenty-one years from the date of the warrant; and after that lapse of time he cannot recover, no matter how clearly he may be able to prove that the legal owner was in the beginning a trustee for him. . . . When I say that the suit must be brought within twenty-one years from the date of the warrant, I speak of a case like the present one in which the alleged trust is proved by the naked and solitary fact of the payment of purchase money. Where the *cestui que trust* has superintended the survey, and paid the officer's fees, or exercised other acts of ownership over the land, the presumption in favor of the trustee would perhaps not begin to arise until he did some act of hostility, such as selling his title, or taking out a patent to himself."

In the present case the evidence admitted was held to establish a *prima facie* legal title in Dr. Thomas Ruston. It was sufficient to establish that he paid the purchase money, and the other proof in the case showed that he and those who claimed under him exercised acts of ownership over the property until their possession was disturbed violently by the defendants below in the year 1875. The defendants were able to offer nothing in opposition to this, except the patent under which there had been no claim of title for more than seventy-five years, and which was not connected by any proof, other than its own recitals, with the warrant and survey.

In *Glass* v. *Gilbert*, 58 Penn. St. 266, it was decided that the doctrine of *Strimpfler* v. *Roberts*, 18 Penn. St. 283 [*S. C.* 57 Am. Dec. 606], and *McBarron* v. *Glass*, 30 Penn. St. 133, that a trust will not be sustained between the warrantee and one who has paid the purchase money after twenty-one years, without possession taken by the claimant, &c., does not apply to a

stranger to the title of the warrantee. If twenty-one years elapse before interference by a junior survey, the presumption in favor of the first, although a chamber survey, becomes absolute. It follows from the foregoing that the evidence introduced by the plaintiffs below was competent and sufficient to establish in Dr. Ruston a legal title to the lands in question.

The next assignment of error is founded upon the objection made to the admission of the record and proceedings in the Orphans' Court of Philadelphia County, resulting in the sale of the title of Nicholas Le Favre to the Lewis Walker tract to Joseph Brobst, by the deed of May 9, 1837. This objection was, that it appeared from the face of the petition for the sale of the real estate of the decedent that the debts, to pay which it was alleged that the sale was necessary, were barred by the statute of limitations, and that, as a consequence, the Orphans' Court had no jurisdiction to make the order of sale. The course of proceeding taken in the present case, as shown by the transcript, was, 1st, a petition to the Orphans' Court of Philadelphia for authority to sell, that being the court which had jurisdiction of the accounts of the executor; 2d, a petition to the Orphans' Court of Northumberland County, in which the land was situated, an order of sale granted thereon, and sale made, and, as required by the express provisions of the statute of 1832, then in force, the return of the sale made to and confirmed by the same court sitting in the county where the land is situated. It is scarcely necessary to cite authority in support of the proposition that the orders, judgments, and decrees of the Orphans' Court, in a case where it had jurisdiction of the subject-matter, cannot be impeached collaterally; much less is it so in the present case, because the statute of Pennsylvania of March 29, 1832, 2 Brightly's Purdon's Digest, p. 1279, pl. 3, (11th ed.,) provides as follows: "The Orphans' Court is hereby declared to be a court of record, with all the qualities and incidents of a court of record at common law; its proceedings and decrees in all matters within its jurisdiction shall not be reversed or avoided collaterally in any other court; but they shall be liable to reversal or modification or alteration on appeal to the Supreme Court, as hereinafter

directed." *Iddings* v. *Cairns*, 2 Grant (Penn.), 88; *Riland* v. *Eckret*, 23 Penn. St. 215. In *Dreishner* v. *Allentown Water Co.*, 52 Penn. St. 225, 229, Mr. Justice Strong said: "Orphans' Court decrees are doubtless conclusive. They cannot be impeached collaterally."

The next assignment of error is founded upon the refusal of the court to admit as evidence the certified copy of the patent from the Commonwealth of Pennsylvania to Peter Grahl, dated April 12, 1797, with a recital therein of the fact that Lewis Walker, by deed dated November 27, 1793, had conveyed the tract in question to Peter Grahl. The legal title of Thomas Ruston to the premises in dispute, established by the warrant and survey and payment of the purchase money, was perfected by the return made by the deputy surveyor into the land office on February 23, 1795. According to the doctrine established by the authorities already cited, it was not competent for the Commonwealth of Pennsylvania to affect that title by a subsequent patent to a stranger. Peter Grahl, the patentee, was not connected with the title under the warrant and survey, otherwise than by the recital contained in the patent itself, that the tract had been previously conveyed to him by Lewis Walker. Clearly that recital was not evidence against the plaintiffs, for, if the patent could not take effect against them without it, it could not give any effect to that recital. Their right had already vested prior to the existence of the patent, and the grant to them could not be affected by a subsequent grant to a stranger. That such is the uniform course of decisions in Pennsylvania appears by numerous cases. *Penrose* v. *Griffith*, 4 Binney, 231; *Maclay* v. *Work*, 5 Binney, 154; *Woods* v. *Wilson*, 37 Penn. St. 379; *Delaware & Hudson Canal Co.* v. *Dimock*, 47 Penn. St. 393; *Urket* v. *Coryell*, 5 W. & S. 60; *Balliott* v. *Bauman*, 5 W. & S. 150, 155; *Smith* v. *Vasbinder*, 77 Penn. St. 127, 130.

It is next assigned for error that the court below erred in rejecting that portion of the return of William Gray, deputy surveyor, offered to be read in evidence by the defendants below. That portion of the return related to other surveys in the same township, returned as belonging to Dr. Ruston, and

was offered for the ostensible purpose of explaining that part of the return of William Gray, the deputy surveyor, and the assessment for taxes received in evidence on the part of the plaintiff below, and in order to show that the taxes alleged to have been paid by Dr. Thomas Ruston might have been paid upon other tracts than the Lewis Walker tract in controversy. It seems to us, however, very clear that the offer was rightly rejected; that the part of the return offered related to other lands than the tract in question, was wholly irrelevant to the issue in the case, and did not tend to prove any material fact.

Neither was there any error in the other rulings of the court excepted to, in reference to other offers of evidence by the defendants below, made with the view of showing that Thomas Ruston paid taxes and made claims to other surveys in the name of Lewis Walker than that of the tract in dispute. None of them tended to show that Ruston was not the owner of the Lewis Walker tract in controversy, whatever they may have shown with reference to his claims to other tracts for which warrants and surveys had been made in the same name.

This disposes of all the questions raised by the assignments of error.

We find no error in the record, and the judgment is accordingly

*Affirmed.*