EMMA W. DAVIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68525.   Promulgated July 12, 1935.

*Sears Lehmann, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

### OPINION.

McMAHON: This is a proceeding for the redetermination of a deficiency in income tax for the year 1930 in the amount of $4,739.93. It is alleged that, due to the basis used, the respondent erred in holding that the petitioner derived a gain of $17.34 instead of a loss of $23,873.16 upon the sale of Houston Oil Co. stock in 1930.

The petitioner is an individual, with residence in St. Louis, Missouri. Edward Whitaker, father of the petitioner, died in the early part of April 1926, leaving a net estate of over $2,000,000. The petitioner was the residuary legatee and inherited the greater portion of the estate.

Much of the property was in stock located in eight or ten states. The stock in question, about 900 shares of stock of the Houston Oil Co., was subject to inheritance tax of the State of Missouri. Both the State of Arkansas and the State of Texas claimed the right to tax it, under their inheritance tax laws. The attorney for the estate was of the opinion that neither the State of Texas nor the State of Arkansas had a right to any tax from the estate. The Federal estate tax on this estate was large enough so that all the state taxes combined were less than 80 percent thereof, so that the estate had no financial interest in defeating a state inheritance tax. However, the attorney for the estate was under the firm conviction that no tax was owed to Arkansas or Texas.

As early as September 10, 1926, the attorney for the estate started writing to the transfer agent of the Houston Oil Co. in Baltimore, Maryland, in an attempt to get the stock transferred to this petitioner. On February 3, 1927, he wrote the inheritance tax department of the Comptroller of the State of Texas in this regard.

The will of Edward Whitaker was duly probated in the Probate Court at St. Louis, Missouri, pursuant to a petition for the distribution of the estate. The court ordered distribution of the estate, specifically including the stocks in question herein, on March 26, 1927. On April 27, 1927, the commissioner in charge of revenue of the State of Arkansas admitted that there was no tax due to Arkansas.

The executors of the estate were F. Lehmann, Sam Davis, and E. J. Costigan. The deceased had been a director in the Houston Oil Co. and after his death Sam Davis succeeded him on the board of directors of that corporation. The attorney for the estate instructed Davis, each time he attended a meeting of the Houston Oil Co. directors, to try to get the company to transfer the stock

prior to payment of the tax. However, the Houston Oil Co. refused to transfer the stock unless the taxes claimed by the State of Texas were paid. The executors of the estate then gave orders for the attorney for the estate to pay this tax, which he did with objections. The taxes, including taxes on other stock, were paid on June 14, 1928. All the taxes amounted to $5,036.60 and on June 27, 1928, the Comptroller's Department of the State of Texas issued a receipt therefor and a waiver authorizing the transfer of the stock on the books of the corporation. The stock was transferred to the name of the petitioner on June 29, 1928, the date the receipt was received. The petitioner had been demanding this stock all the time as she wanted to sell it, but June 29, 1928, was the earliest date upon which she could obtain it, since the inheritance tax demanded by the State of Texas had not been paid.

Between March 26, 1927, and June 29, 1928, the value of this stock increased.

The respondent held that the date of distribution of the stock of the petitioner was March 26, 1927, the date on which the Probate Court ordered distribution thereof.

Upon the foregoing facts, which we find, the parties have presented to us for determination only one question: What was " the time of the distribution " of the stock in question to the petitioner within the meaning of section 113 (a) (5) of the Revenue Act of 1928?[1] The respondent held that the date of distribution was March 27, 1927, the date on which the Probate Court ordered distribution of the estate, specifically including the stock in question; and held that the basis for determination of gain or loss upon its disposition is its value at that time. The petitioner contends that the time of distribution was June 29, 1928, the date the stock was transferred to her, since prior to that time the corporation refused to transfer the stock without authorization of the State of Texas and since such authorization was not given until June 27, 1928, upon the payment of the inheritance taxes claimed by the State of Texas to be due; and contends that the proper basis is its value at that time. The values at those respective times are not in question.

---

[1] (a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \*

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. \* \* \*

In *William R. Huntley*, 30 B. T. A. 931, the surrogate, on May 22, 1929, had ordered a distribution of certain stock, but the certificates for the stock were not delivered to the beneficiaries until June 20, 1929, and July 12, 1929. The stock was sold in 1930. It was there held that the time of distribution was the time of the surrogate's decree. We there stated in part:

* * * Here the surrogate's decree did not direct distribution to be made at a future date, but the executors were ordered to make distribution without limitation as to time, and hence they were authorized to distribute immediately after the signing and entry of the decree. The effective date of the decree was, therefore, May 22, 1929. On and after that date the respective petitioners were the owners of the shares of stock set aside and distributed to them by the decree. Any increase in the value of the stocks thereafter would inure exclusively to their benefit, and they alone would suffer loss resulting from any decline in the value after that date.

A certificate of stock merely evidences ownership, it is not the stock itself. If certificates representing the shares of stock distributed to these petitioners had never been delivered to them by the executors, they would nevertheless have been the owners of interests in the respective corporations from May 22, 1929. Therefore, the dates on which the stock certificates were actually delivered to the petitioners are not the dates on which they became the owners of the property or interest rights in the corporations; they became owners of such property rights on the effective date of the decree of distribution, namely, May 22, 1929.

Plainly, we think, to adopt the contention of the petitioners that " the time of the distribution " is the date on which actual delivery is made would throw open the door to tax evasion and lead to results not contemplated by Congress in adopting the statute in question. In such event, any taxpayer in the position of these petitioners could obtain an increased basis for computing profit or loss by merely deferring acceptance of possession of the stock certificates on a rising market where the value of the stock was increasing.

The instant proceeding is in principle controlled by the *Huntley* case. Cf. *First National Bank of Birmingham, Guardian*, 31 B. T. A. 847; *Carrie G. Cox*, 31 B. T. A. 819; *St. Louis Union Trust Co. et al., Co-trustees*, 30 B. T. A. 370.

In *Willcuts* v. *Ordway*, 19 Fed. (2d) 917, a case involving a different statute but which we consider pertinent here, it was stated:

Distribution * * * does not necessarily mean passing into the uncontrolled possession and disposition of the beneficiary. It means separation or segregation from the trust estate so that it [the bequeathed property] no longer forms any part or parcel thereof.

See also *Fidelity & Columbia Trust Co.* v. *Lucas*, 66 Fed. (2d) 116.

The succession to the personal estate of a deceased person and the distribution thereof, wherever it may be situated, are governed by the law of his domicile at the time of his death. *St. Louis* v. *Wiggins Ferry Co.*, 11 Wall. 423; *Eidman* v. *Martinez*, 184 U. S. 578; and *Middleton* v. *Luckenbach S. S. Co.*, 5 Fed. Supp. 238, 241. Cf. *First National Bank* v. *Maine*, 284 U. S. 312. Here, so far as we are informed,

the decedent at the time of his death was domiciled in Missouri, and it is not contended by the petitioner that the Probate Court of St. Louis, Missouri, did not have jurisdiction to grant her a valid title to the stock in question, and to order the distribution thereof to her.

We are not here concerned with the legality or illegality of the taxes exacted by the State of Texas; and it is not material here that that state refused to consent to a transfer of the stock on the books of the corporation until the taxes were paid. This is true even if we assume for the purposes of discussions that the Houston Oil Co. is a Texas corporation, as it probably is. Nor is it material that the petitioner or the executors of the estate, or the attorney representing the estate, chose to refuse to pay the taxes to the State of Texas and to contest that matter. Irrespective of all this the petitioner became the owner of the stock in question by virtue of the decree of the Probate Court and, so far as the evidence shows, acquired the right to have the stock distributed to her immediately upon the date of the decree. The decree of the Probate Court effected a distribution of the stock to the petitioner. The assets, by virtue of the decree, became assets of the petitioner instead of assets of the estate. The fact that the stock may have been subject to a lien for Texas inheritance taxes, whether legally or illegally asserted, does not affect the question of ownership of the stock of the right to a distribution thereof. In our opinion, the petitioner, any time after the decree of the Probate Court, could have required the executors to pay the tax claimed by the State of Texas and cause the stock to be issued in her name; or she, herself, could have paid the tax and demanded the stock.

We hold that the time of the decree of the Probate Court ordering distribution was " the time of the distribution to the taxpayer " within the meaning of section 113 (a) (5) of the Revenue Act of 1928.

We do not consider the case of *Brewster* v. *Gage*, 280 U. S. 327, controlling. There the Court had under consideration the question of the time of " acquisition " of certain stocks by a residuary legatee, under the provisions of section 202 of the Revenue Acts of 1918 and 1921. The statute with which we are concerned is quite different. We are here concerned with the time of " distribution." In that case the Supreme Court referred to the provision of the Revenue Act of 1928, with which we are concerned, and stated : " The deliberate selection of language so differing from that used in the earlier acts indicates that a change of law was intended." See *Arthur E. Braun, Trustee*, 29 B. T. A. 1161, 1176, which similarly distinguished *Brewster* v. *Gage, supra.*

*Decision will be entered for the respondent.*