HARWOOD ROBBINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67076. Promulgated January 7, 1936.

*Thomas R. Dempsey, Esq., A. Calder Mackay, Esq.,* and *Arthur McGregor, Esq.,* for the petitioner.
*DeWitt M. Evans, Esq.,* for the respondent.

#### OPINION.

SMITH: This proceeding involves a deficiency in petitioner's income tax for the calendar year 1929 in the amount of $68,356.49. The only question in issue is the amount of gain, if any, derived by the petitioner upon the sale of certain personalty acquired by him by general devise from his mother's will. The dispute arises as to the basis to be used in computing the gain or loss on such property. Substantially all of the facts have been stipulated.

The petitioner's mother, Harriet C. Robbins, died testate in 1910, a resident of the State of Ohio, leaving a large estate, and her will

was duly probated in Hamilton County, Ohio. The provisions of the will pertinent to this proceeding are as follows:

Item twenty-four (24). I bequeath and devise all the rest and residue of my estate, of every kind and character, wherever situate, and especially including all property that I am given power to dispose of by the terms of the will of my father, Edward Harwood, deceased, late of Hamilton County, Ohio, to my son, Harwood Robbins, and my grandson, Harwood Schultz, their heirs and assigns forever, to be divided equally between my said son and my said grandson, share and share alike, but

Provided, however, that if my said grandson, Harwood Schultz, should die without a wife or child living at the time of his death, the share hereby bequeathed and devised to him, shall pass to my son, Harwood Robbins, his heirs and assigns forever. If, however, he leaves no child but leaves a wife, she is to receive forty thousand dollars ($40,000.00), and the balance of the share hereby bequeathed and devised to him, shall pass to my son, Harwood Robbins, his heirs and assigns forever.

\* \* \* \* \* \* \*

Item twenty-six (26). The portion of my estate given to my grandson, Harwood Schultz, which is in stock of the Grasselli Chemical Co. is to be left in said company for at least five years after my death, and he to have the income from same. After that, he can leave it there or not, as he pleases.

The testatrix' son, Harwood Robbins, is the petitioner herein. The testatrix' grandson, Harwood Schultz, subsequently had his name changed to Harwood Spencer.

On April 6, 1910, the petitioner and Spencer entered into a written agreement interpreting certain parts of the will of Harriet C. Robbins, which provided, among other things, that the child referred to in item 24 of the will should be an issue of blood and not an adopted child; that in lieu of the $40,000 to be paid to Spencer's wife she would receive the equivalent in Grasselli Chemical Co. stock; and that the petitioner would wait one year after Spencer's death before serving his claim or collecting his inheritance.

In 1912 Spencer obtained possession of 1,084½ shares of common stock of the Grasselli Chemical Co., his portion of the estate under the will of Harriet C. Robbins, which was later increased to 8,020 shares by stock dividends.

Ignoring the provisions of the will of Harriet C. Robbins and the agreement of April 6, 1910, with the petitioner, Spencer subsequently attempted to cut off the petitioner's interest in his mother's estate by entering into certain trust agreements with the Union Trust Co., of Cleveland, Ohio, by which he conveyed to it in trust all of his shares of the Grasselli Chemical Co. stock for the benefit of himself for life and then to his wife for life, and after her death to persons to be appointed by her in her will, or, on her failure to appoint, to certain of her relatives.

Spencer died September 23, 1928, leaving a will but no children. By his will dated December 22, 1922, he bequeathed all the residue

of his estate to the Union Trust Co., of Cleveland, Ohio, to be added to the trust fund above mentioned and disposed of as though originally a part thereof.

Upon Spencer's death the petitioner immediately claimed the Grasselli Chemical Co. stock which had been transferred to the Union Trust Co. in trust by Spencer, but Spencer's widow opposed the petitioner's claim and the trust company refused to deliver the stock to the petitioner. Thereupon, the petitioner, on January 19, 1929, instituted an action against the trust company and Spencer's widow in the Court of Common Pleas, Cuyahoga County, Ohio, to obtain possession of the certificates of stock.

Before the final determination of the suit and on July 1, 1929, the petitioner, party of the first part, the Union Trust Co., party of the second part, and Spencer's widow, party of the third part, entered into an agreement of compromise and settlement whereby it was agreed, among other things, that out of the property the widow was to be paid approximately $50,000 in cash and that a trust fund of $240,000 would be created for her benefit during the remainder of her life. The material provisions of the agreement are as follows:

1. That on the execution of this agreement, Second Party shall surrender said 8020.4268 shares of The Grasselli Chemical Company stock and demand $20 par stock of the said duPont Company in exchange therefor, 5614 shares of which duPont stock and all accruals thereof since September 23rd, 1928, and said five thousand six hundred fourteen shares of said duPont stock will hereinafter be referred to as " said stock."

2. That as soon as possible after the execution of this agreement Second Party shall sell on the market a portion or portions of the said stock sufficient to produce the net sum of $50,000 which sum thereupon shall be kept by Second Party in a separate account and invested and administered in accordance with the terms of the later of said trust agreements, including the payment of the net income therefrom by Second Party to Third Party. Also, Second Party shall pay Third Party interest on $40,000 from September 23rd, 1928 and on $10,000 from July 1st, 1929, at the rate of six per cent per annum until the said sale is made and said $50,000 is placed in said separate account, and shall make such payment of interest as soon as income from said stock sufficient therefor is received.

3. That out of the income from said stock or the balance thereof, or the reinvestment thereof, or if necessary out of the principal thereof, Second Party shall pay the sum of One Thousand Dollars ($1,000) on the first day of each and every month commencing as of the first day of October, 1928, to Third Party during her life time, together with interest at the rate of six per cent per annum on such monthly instalments as have already accrued and as may accrue before monthly payments are paid up to date from the due date until paid, and that such payments shall be brought up to date as soon as possible.

4. That Second Party shall pay the balance of the net income from said stock or the reinvestment thereof to First Party, making payment as soon as possible of such amount of such net income as remains after bringing payments to Third Party as specified in paragraphs 2 and 3 hereof up to date, and continuing payments thereafter quarterly when, as and if net income is available for distribu-

tion saving only such amount as will enable Second Party to make the payments provided for in paragraph 3 hereof during the succeeding quarter.

\*　　\*　　\*　　\*　　\*　　\*　　\*

8. That if it be finally adjudicated in said pending case after all persons or parties having and/or claiming to have an interest in said stock have been made parties defendant in said case that said parties who have or claim to have an interest in said stock have no interest therein and can never have any claim thereto against Second Party under said trust agreements, or if Second Party is otherwise assured to its satisfaction that no one can ever have a claim against it for said stock except First and Third Parties, their heirs, executors, administrators, successors and assigns whose rights are set forth in this agreement, then the property in the special account set up pursuant to paragraph 2 hereof or the proceeds thereof including the income then accrued or earned thereon shall be transferred and/or paid by Second Party to Third Party and the obligations of Second Party under said paragraph 2 thereupon shall cease and be ended, and a portion of said stock or funds derived from the sale thereof of the value of Two Hundred and Forty Thousand Dollars ($240,000) shall be placed in trust with Second Party as the trustee and that thereafter the monthly payments of One Thousand Dollars ($1,000) to Third Party as agreed to in paragraph 3 hereof shall be paid from the income derived from said trust and that if the income therefrom shall be insufficient for such payments that the trustee shall have the right to use such portion of the principal of said trust fund as may be necessary to make such payments. If such trust funds should become exhausted before the death of Third Party, then Second Party shall be released from any further obligation to make such monthly payments to Third Party and such monthly payments shall thereafter be made to Third Party by First Party. Upon the death of Third Party the balance of the principal and income then in said trust fund shall be paid by Second Party to First Party or to such party or parties as First Party may direct. Said trust agreement shall be drawn in accordance with the form heretofore submitted by Second Party to First Party and to Third Party.

9. That if the adjudication referred to in paragraph 8 hereof is made or if Second Party is otherwise assured as to claims, as set forth in said paragraph 8, the portion of said stock and the proceeds thereof and the income from the same not otherwise disposed of hereunder shall be transferred and/or paid by Second Party to First Party, and the property now held by Second Party under said trust agreements which is not represented by " said stock " shall be administered by Second Party under the trust agreement where listed at the time of the death of Harwood Spencer if identifiable and otherwise under such one of said trust agreements as may be finally ordered in said pending case.

10. That as soon as possible after the execution of this agreement and on the order of First Party, Second Party will sell on the market a portion or portions of the said stock in addition to the stock referred to in paragraph 2 hereof, of the value of not to exceed One Hundred Thousand Dollars ($100,000), the proceeds of said sale to be held by the Second Party until this settlement can be fully consummated. The proceeds of such sale shall bear interest at the rates paid by Second Party in its savings department during such period as such proceeds are held by Second Party in accordance with the then rules of its savings department or shall be reinvested as First Party and Second Party may agree upon. First Party hereby authorizes his attorneys, Griswold, Green, Palmer & Hadden to make and transmit to Second Party such order to sell said stock and such agreement as to reinvestment.

884

11. That if it shall not be finally adjudicated in said pending case after all persons or parties having and/or claiming to have an interest in said stock have been made parties defendant in said case, that said parties who have or claim to have an interest in said stock have no interest therein and can never have any claim thereto against Second Party under said trust agreements, or if Second Party is not otherwise assured to its satisfaction that no one can ever have a claim against it for said stock except First and Third Parties, their heirs, executors, administrators, successors and assigns, as set forth herein, then the provisions of paragraph 2 hereof shall be continued in effect until the death of Third Party, and said stock shall be administered by Second Party under the terms and conditions of said trust agreements between Second Party and Harwood Spencer as modified by paragraphs 2, 3, 4, 5, 6, 11, 12 and 13 hereof.

Notwithstanding the agreement of settlement, the trust company refused to release the stock to the petitioner until the court had entered its decree quieting title against other possible beneficiaries under the trust agreements and the will of Harwood Spencer. In the meantime, and under the provisions of the settlement agreement, the trust company exchanged the 8,020 shares of Grasselli Chemical Co. stock for 1,604 shares of E. I. duPont de Nemours & Co. stock, which latter shares were subsequently increased by reason of stock dividends to 5,614 shares. Immediately after this exchange the stockholders of the Grasselli Chemical Co. did not own or control 80 percent or more of the shares of the E. I. duPont de Nemours & Co. shares.

Thereafter, during August and September 1929, the trust company sold 2,940 shares of the duPont stock for $615,007.70. Of the proceeds from this sale, $240,000 was held in trust by the trust company to provide the annuity of $12,000 per annum which Spencer's widow was to receive under the settlement agreement.

On November 23, 1929, the court entered its decree in the suit to quiet title in the petitioner's favor. The decree reads in part as follows:

IV. The court further finds that plaintiff, under the will of Harriet Chase Robbins, became on the 23rd day of September, 1928, the owner absolutely and in fee simple of the 8020.4268 shares of the no par common stock of The Grasselli Chemical Company referred to in plaintiff's petition and in the answer of defendant The Union Trust Company and in the first cause of action of its cross-petition; that the ownership of said stock by the plaintiff was subject to the payment of Forty thousand dollars ($40,000) as of the said 23rd day of September, 1928, to said Katharine W. Spencer, for the payment of which $40,000 and interest thereon from the 23rd day of September, 1928, said Katharine W. Spencer has a charge and lien upon said stock; that on the 18th day of July, 1929, said The Union Trust Company rightfully changed said 8020.4268 shares of Grasselli stock into 5614 shares of the present $20.00 par common stock of E. I. duPont de Nemours & Company; that said The Union Trust Company held possession of and legal title to said stock and/or the proceeds thereof under the two trust agreements attached to its answer and cross-

petition herein, but since said 23rd day of September, 1928, holds said stock or the proceeds thereof and the dividends, interest, income, rights, and privileges accrued or accruing by reason thereof, as trustee for the benefit of plaintiff and said Katharine W. Spencer as their interests are herein set forth, respectively, and for no other purpose and in no other capacity; and that plaintiff is entitled to the payment, assignment, transfer, conveyance and delivery of said 5614 shares of duPont stock, or the proceeds thereof, and the dividends, interest, income, rights and privileges accruing thereon since said 23rd day of September 1928, upon the payment of $40,000 and interest upon said sum from said 23rd day of September, 1928, until said sum and interest is paid to said Katharine W. Spencer.

\*     \*     \*     \*     \*     \*     \*

VIII. A written agreement of settlement entered into between plaintiff and defendants The Union Trust Company and Katharine W. Spencer after the filing of the petition herein and as of the 1st day of July, 1929, was offered in evidence. The court finds that said agreement has no bearing upon the determination of the issues herein, and no issue having been presented to the court as to the rights of the parties to said agreement among themselves under the agreement, the court expressly refrains from making any finding, adjudication or order as to such rights, and the findings, adjudications and orders contained in the preceding paragraphs hereof are made without prejudice to such rights.

Soon after November 23, 1929, the trust company, after defraying litigation and other expenses, and paying $52,362.53 to Spencer's widow as provided in the settlement agreement, distributed to the petitioner the remainder of the proceeds of the above mentioned sale of duPont shares, together with 2,674 additional duPont shares which remained unsold.

In his income tax return for 1929 the petitioner reported a loss on the sale of the duPont shares by the trust company of $33,249.10 computed as follows:

| | |
|---|---:|
| Sold 2,940 shares for | $615, 007. 70 |
| Less 210.8 shares (Spencer's widow's undisputed part) | 40, 000. 00 |
| Balance 2,729.2 shares sold for | 575, 007. 70 |
| Value, July 1, 1929, 2,729.2 shares at $187.50, less brokerage | 511, 042. 70 |
| Additional cost (including payments and annuities to Spencer's widow, attorneys' fees, compensation to trustee, etc | 97, 214. 10 |
| Loss | 33, 249. 10 |

The petitioner bases his claim for the loss upon the theory that the shares of stock were distributed to him within the meaning of section 113 (a) (5) of the Revenue Act of 1928 on July 1, 1929, at the time of and by reason of the agreement of settlement between him, the trust company, and Spencer's widow. The respondent contends, on the other hand, that the time of distribution was the death of the grandson, September 23, 1928, when the fair market value of the shares

was $66 per share. On that basis the respondent has computed a gain to the petitioner of $293,135.27 computed as follows:

*Total shares received 5,614*

| | | |
|---|---:|---:|
| Sold 2,940 shares | | $615,007.70 |
| Less 210.8 (Mrs. Spencer's share u/w of Harriet Robbins) | | 40,000.00 |
| | | |
| Balance 2,729.2 shares sold for | | 575,007.70 |
| Cost: | | |
| Market value 5,614 shares at 66, 9/23/28 | [1] $370,524.00 | |
| Annuity contract, per settlement agreement | 159,803.76 | |
| Attorney fees | 35,000.00 | |
| Mrs. Spencer, per settlement agreement | 10,000.00 | |
| Interest | 2,363.53 | |
| Union Trust Co.—Miscl. expenses | 2,125.01 | |
| | | |
| Total cost of 5,614 shares | 579,815.30 | |
| Cost per share | 103.28024 | |
| Cost of stock sold (2,729.2 x 103.28024) | | 281,872.43 |
| | | |
| Taxable profit | | 293,135.27 |

It is stipulated that the fair market value of the duPont shares was $187.50 on July 1, 1929, and $114.25 on November 23, 1929, and that the value of the 8,020.4268 shares of the Grasselli Chemical Co. stock on July 1, 1929, and July 18, 1929, was of equal fair market value to the 5,614 shares of duPont stock which was received in exchange therefor.

Section 113 (a) (5) of the Revenue Act of 1928 provides:

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*      \*      \*      \*      \*      \*      \*

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death.

---

[1] September 23, 1928, Sunday, date of death, no quotation. September 22, 1928, Saturday, 100 shs. offered at 67, no bid. September 15, 1928, Saturday, 100 shs. sold at 65. Average of 66 used.

Since the property in question, viz., the 8,020 shares of Grasselli Chemical Co. stock, does not come within any other of the classes of property described in section 113 (a) (5) above, it necessarily falls under the provisions of the third sentence of the quoted section, that " in all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer." It is upon this question, that is, the date of distribution, that the petitioner and the respondent base their contentions in this proceeding, the respondent contending that the date of distribution is the date of the death of the grandson, September 23, 1928, and the petitioner contending that the date of distribution is the date on which the settlement agreement was executed, July 1, 1929, or, in the alternative, the date on which the final decree of the court quieting title was rendered, November 23, 1929.

Before discussing the issue as thus narrowed, it may be well to note that under the will of the testatrix the petitioner did not take a vested remainder interest in that half of the residuary estate which was bequeathed to the grandson, but took only a contingent interest which was to become absolute in the event that the grandson should predecease him leaving no issue. See *Lane* v. *Corwin*, 63 Fed. (2d) 767; certiorari denied, 290 U. S. 644; *Edmund S. Twining*, 32 B. T. A. 600; *William P. Clyde, Jr.*, 32 B. T. A. 799. The grandson's interest in the property was not merely a life estate with remainder over to the petitioner but was an estate in fee simple subject to divestment upon the contingency named. The wording of the will is:

\* \* \* I bequeath and devise all the rest and residue of my estate, \* \* \* to my son, Harwood Robbins, and my grandson, Harwood Schultz, their heirs and assigns forever, to be divided equally between my said son and my said grandson, share and share alike.

As was later determined by the court in the action to quiet title, the petitioner's right to the property bequeathed to the grandson vested in him and he acquired title thereto on the death of the grandson, September 23, 1928.

What we are called upon to determine, however, is not the date of acquisition of the property by the petitioner but " the time of the distribution " to him. A recognition of the possible distinction between the two dates is shown by the change in the wording of the. revenue acts fixing the basis for computing gain or loss on the sale of such property from the " time of such acquisition " as it appears in the 1926 Act to the " time of the distribution " as it appears in section 113 (a) (5) of the 1928 Act. With respect to this change in the law, the Supreme Court, in *Brewster* v. *Gage*, 280 U. S. 327, said:

The Revenue Act of 1928, § 113 (a) (5), expressly established value at the time of the death of the decedent as the basis of calculation in respect of sales

of personal property acquired by specific bequest and of real estate acquired by general or specific devise, or by intestacy, and in all other cases fixed market value at the time of distribution to the taxpayer as the basis. 45 Stat. 819 (26 U. S. C. A. § 2113). The deliberate selection of language so differing from that used in the earlier acts indicates that a change of law was intended. * * *

See also *Ralph W. Harbison*, 26 B. T. A. 896, for further discussion of the legislative history of section 113 (a) (5) above.

*Brewster* v. *Gage, supra*, arose under the earlier Acts of 1918 and 1921, which were similar to the 1924 and 1926 Acts, the Court holding that under the earlier acts the time of acquisition and the base for determining gain or loss on the sale of the property acquired by general devise was the value at the date of the death of the testator and not the date of distribution to the legatees. In its opinion the Court said:

Upon the death of the owner, title to his real estate passes to his heirs or devisees. A different rule applies to personal property. Title to it does not vest at once in heirs or legatees. *United States* v. *Jones*, 236 U. S. 106, 112, 35 S. Ct. 261, 59 L. Ed. 488, Ann. Cas. 1916A, 316. But immediately upon the death of the owner there vests in each of them the right to his distributive share of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. * * * The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees, and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death. *Foster* v. *Fifield*, 20 Pick. (Mass.) 67, 70; *Wager* v. *Wager*, 89 N. Y. 161, 166; *Thompson* v. *Thomas*, 30 Miss. 152, 158.

Petitioner's right later to have his share of the residue vested immediately upon testator's death. At that time petitioner became enriched by its worth, which was directly related to and would increase or decline correspondingly with the value of the property. And, notwithstanding the postponement of transfer of the legal title to him, Congress unquestionably had power and reasonably might fix value at the time title passed from the decedent as the basis for determining gain or loss upon sale of the right or of the property before or after the decree of distribution. And we think that, in substance, it would not be inconsistent with the rules of law governing the descent and distribution of real and personal property of decedents to construe the words in question to mean the date of death.

In so deciding, the Court rejected the ruling of the Board in *F. W. Matthiessen, Jr.*, 2 B. T. A. 921, and *Alice Fisher Foster*, 7 B. T. A. 1137, and of the Court of Claims in *Matthiessen* v. *United States*, 65 Ct. Cls. 484; certiorari denied, 278 U. S. 609, that the value at date of acquisition meant value at date of distribution.

The phrase "the time of the distribution" as used in the 1928 Act must necessarily relate to the time at which the property is actually delivered to or made available for the use of the distributee or someone acting for him by the executors, administrators, or others having

lawful possession or control thereof. See *Haskell* v. *Commissioner*, 78 Fed. (2d) 869; certiorari denied, 296 U. S. 652. Otherwise, it is difficult to see how any effect could be given to the change enacted in the 1928 Act. This time may occur immediately upon the death of the prior owner or at some later date during the process of administration of the estate. *Brewster* v. *Gage*, supra. It is a question to be determined from the facts in each case.

It seems clear in the instant case that whatever were the petitioner's rights of ownership with respect to the property in question before that time, he did not actually receive it by way of any distribution, nor was it within his power to possess it until the court entered its decree quieting title thereto. How, then, can it be said that the property was distributed to him prior to that time?

The respondent has determined that the distribution took place at the date of death of the grandson, September 23, 1928. Yet, at that time nothing whatever was actually done by way of distributing the property to the petitioner. It was then being held by the trust company as trustee and it was continued to be so held for over a year thereafter. The petitioner laid claim to the property under his mother's will immediately upon the grandson's death, but the grandson's widow made adverse claim and the trust company, as trustee, properly refused to release it until the rights of the parties had been determined by the court. The trust company's position during the interim between the death of the grandson and the decree of the court was analogous to that of any duly appointed executor, administrator, or trustee. It had possession of the property and held legal title thereto for the benefit of others. If the property had not been so held at the time it is probable that the court would have appointed a trustee *ad litem* upon the filing of the suit to quiet title.

It is true that the property in question never fell into the deceased grandson's estate and was not subject to distribution by his executors, or administrators, but that is not material here. His death was the event that vested title in the petitioner and passed ownership in the property to him just as the death of a testator commonly vests title to the property of the estate in the legatees. In no event does the time of the death of the present owner necessarily bear any relation to the time of the distribution of the property to the successor owner.

We held in *Arthur E. Braun, Trustee*, 29 B. T. A. 1161, that the dates of distribution within the meaning of section 113 (a) (5) above were the dates on which the properties were ordered to be distributed by court decrees and not the dates when the decrees were entered. Also, we held in *William R. Huntley*, 30 B. T. A. 931, that the date of distribution was the effective date of the decree of dis-

tribution rather than the date of actual delivery to the distributee pursuant thereto.

For the purpose of applying section 113 (a) (5) we can see no reasonable grounds for a distinction between the distribution by the trust company here and that of the ordinary distribution of property by a duly appointed executor or administrator pursuant to a decree of court, as was the situation in the *Braun* and *Huntley* cases.

We do not think that the voluntary agreement entered into by the parties on July 1, 1929, while the suit to quiet title was still pending was, as the petitioner contends, the " distribution " contemplated by the statute. This agreement did no more than definitely determine the separate interests of the claimants to the property just as is often done by the heirs and legatees of an estate in process of administration. The agreement anticipates but does not in itself constitute the distribution. Under the agreement here, certain acts with respect to the property were to be performed by the trust company, but no distribution of any part of the property was to be made or was made to the petitioner until after termination of the suit to quiet title, and then the amount to be distributed, if any, was contingent. See paragraphs 8 to 11, inclusive, of the agreement quoted above.

In our opinion the time of the distribution of the property in question to the petitioner was not the date of death of the grandson or the date of the execution of the agreement, but was the date of the decree of the court quieting title, which was November 23, 1929. This being true, it seems to follow that there was no sale of the shares in question by the petitioner after the distribution. In these circumstances we fail to see how the petitioner is liable to tax upon any gain or entitled to the deduction of any loss on the sale under the provisions of section 113 (a) (5). This section can hardly be construed as intended to fix a base for computing gain or loss on a sale of property which was not determinable until some time after the sale. As we have found, the petitioner here acquired his interest in the property prior to the date of the sale by the trust company but did not receive it in distribution until later. The sale was made not by the petitioner, but by the trust company holding for the petitioner and others. The sale referred to in section 113 (a) (5) is a sale by the taxpayer and not by another. There is no question before us as to the liability of the trust company, as trustee, for any gain on the sale, or the liability of the petitioner as a beneficiary of the trust.

We are of the opinion that whatever was finally distributed to this petitioner pursuant to his mother's will and the settlement agreement constituted his inheritance from his mother's estate and that as such no part of it is taxable to him. The death of the grand-

son, the settlement agreement, and the decree of the court quieting title to the property were all merely the events which determined the vesting and distribution of the petitioner's interest therein.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MATTHEWS concurs in the result.