ROBERT A. TAFT, TRUSTEE UNDER LAST WILL AND TESTAMENT OF CHARLES PHELPS TAFT, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76813.   Promulgated May 27, 1936.

*John H. More, Esq.,* and *Robert A. Taft, Esq.,* for the petitioner.
*C. A. Ray, Esq.,* for the respondent.

OPINION.

ARUNDELL: The parties are agreed that the basis for computation of gain on the sale of the Columbia Gas & Electric common stock is the "fair market value of the property at the time of the distribution to the taxpayer." Sec. 113 (a)(5), Revenue Act of 1928. Their dispute is as to the "time of distribution." The respondent says it was March 26, 1930, when the order of partial distribution was obtained, on which date the stock was worth $97⅞ per share; the petitioner says it was March 31, 1930, when it was endorsed over to Mrs. Taft as trustee, when it was worth $102$\frac{7}{16}$ per share.

Distribution means the separation or segregation from the corpus of the estate so that the property distributed no longer forms any part of the estate. *Willcuts* v. *Ordway*, 19 Fed. (2d) 917. There have been before us several cases with facts similar to this one. In *Arthur E. Braun, Trustee*, 29 B. T. A. 1161, the Orphans' Court of Pennsylvania directed a partial distribution unless exceptions were filed within ten days or an appeal taken within three weeks. We held that the time of distribution was not the date of the decree, but three weeks later, when the appeal period expired. In *William R. Huntley*, 30 B. T. A. 931, the decree directing distribution was issued by the surrogate of a New York court on May 22, 1929, and the transfers of stock certificates were made on June 20, 1929. We there held the earlier date, May 22, 1929, to be "the effective date of the decree of distribution" and the basic date for determining gain or loss. In *Emma R. Davis*, 32 B. T. A. 943, a probate court in Missouri entered an order on March 26, 1927, directing distribution of an estate including certain stock. The corporation whose stock was involved refused to make the transfer until certain state tax matters were settled and the transfer was not actually made until June 29, 1928. We held the decree of the probate court "effected a distribution of the stock" and that the date of the decree was the basic date for gain or loss purposes. In *Harwood Robbins*, 33 B. T. A. 880, in a suit in a common pleas court in Ohio to quiet title, it was held that the taxpayer became the "owner absolutely and in fee simple" of shares of stock in trust on September 23, 1928, the date of death of the grandson of the testatrix. The decree was entered on November 23, 1929, and thereafter the property, or the proceeds of that which had been sold, was distributed to the taxpayer. We held the basic date to be November 23, 1929, saying:

The phrase "the time of the distribution" as used in the 1928 Act must necessarily relate to the time at which the property is actually delivered to

or made available for the use of the distributee or someone acting for him by the executors, administrators, or others having lawful possession or control thereof. See *Haskell* v. *Commissioner* (C. C. A., 3rd Cir.), 78 Fed. (2) 869; *certiorari denied*, —— U. S. ——, December 16, 1935. Otherwise, it is difficult to see how any effect could be given to the change enacted in the 1928 Act. This time may occur immediately upon the death of the prior owner or at some later date during the process of administration of the estate. *Brewster* v. *Gage*, 280 U. S. 327. It is a question to be determined from the facts in each case.

The question here is whether, under the rule of the above cases, the probate decree or the endorsement of the certificates over to the trustee effected a "separation or segregation" of the shares from the estate (*Willcuts* v. *Ordway, supra*) and made them "available for the use of the distributee" (*Harwood Robbins, supra*). We are of the opinion that the decree of the Ohio probate court did not in and of itself effect a distribution of the property. Probate courts in some jurisdictions have plenary powers over estates of decedents and may determine fully all matters connected with administration of decedents' estates. Thus the surrogates' courts in New York have jurisdiction "to enforce the payment of debts and legacies; the distribution of estates of decedents; and the payment or delivery, by executors, * * * of money or other property * * * belonging to the estate * * *." Sec. 40, New York Surrogate's Court Act; sec. 2510, Bliss' New York Code. In California the rights of a distributee "are fully adjudicated by the decree of distribution." *St. Mary's Hospital* v. *Perry*, 152 Cal. 338; 92 Pac. 864. But in Ohio the probate courts have very limited powers in the matter of directing the distribution of estates. Section 10840, Page's Annotated Code of Ohio, under which Mrs. Taft acted in securing the order of March 26, provides that, after an executor has paid all debts and claims or set aside sufficient funds for their payment to the satisfaction of the court:

* * * he may distribute and pay over in cash, or in kind, all or any part of the assets in his hands * * * to such of the distributees, including * * * trustees * * * as are willing to receive them.

The petitioner stresses the merely permissive—as distinguished from mandatory—character of the distribution which may be authorized under this section, and in this he is fully supported by Ohio decisions. Moreover, the only valid order of distribution that may be issued by the probate court is general in character, and the court has no power to designate the distributees. In *Armstrong* v. *Grandin*, 39 Ohio St. 368, it was held:

It has been settled in *Swearingen* v. *Morris*, 14 O. S. 132, and *Cox* v. *Johns*, 32 O. S. 532, that the only order of distribution here authorized to be made is a general order to the executor or administrator to distribute the funds remaining in his hands according to law. It thus appears that an order

designating or naming the distributees is not authorized by law, and therefore would not disbar any one interested in the distribution from asserting his or her interest thereon.

Similarly, in *First National Bank of Cadiz* v. *Beebe*, 62 Ohio St. 41; 56 N. E. 485, it was said:

But it is to be specially noted that the only power here given with respect to the distribution of estates is to order distribution. This does not mean that the Probate Court may find and direct the persons to whom distribution is to be made, and the amounts to each, but means simply that, as a result of the settlement of accounts of executors and administrators, and as a step necessary to a final distribution of the trust fund, a general order of distribution is to be made. The rights of the parties where there is conflict, are to be worked out in other tribunals, and by process and pleadings adapted to that end.

In *Henry* v. *Doyle*, 82 Ohio St. 113; 91 N. E. 990, it was held:

A general finding of a balance in the hands of an executor or administrator, and an order to distribute it according to law, does not determine either the persons entitled under the law, nor the amount to which each is entitled.

The views of the Ohio Supreme Court were followed by the Federal District Court in *Brown* v. *Routzahn*, 58 Fed. (2d) 329 (reversed 63 Fed. (2d) 914, without discussion of this point) in the following language:

In Ohio the power of a probate court is exhausted in making an order of distribution, and the court has no authority to determine the persons who will receive the assets or the amount to be paid to each. Gen. Code, § 10492 (3); *First Nat. Bank of Cadiz* v. *Beebe*, 62 Ohio St. 41, 56 N. E. 485; *Swearingen* v. *Morris*, 14 Ohio St. 424; *Cox* v. *John*, 32 Ohio St. 532; *Armstrong* v. *Grandin*, 39 Ohio St. 368.

The presence of the testamentary trustees did not enlarge the court's jurisdiction. In administering the distribution statute, a probate court assumes no responsibility and makes no finding that those whose assent the executor has procured or proposes to procure are in fact entitled to the estate.

In view of the above, it would seem that the order of March 26 did not effect a segregation of the shares of stock and was not a distribution within the meaning of the taxing statute.

The executrix, at the time of the court order and for several days thereafter, had the property in her possession and under her control, as executrix, with the right to make distribution. When she decided to distribute to herself as trustee the decision was made with full knowledge of the several steps necessary to complete the transfer so as to put the property in condition to be salable by the trustee. Sale by the trustee before April 13, 1930, was the object in view. As the executrix was aware of the necessity of compliance with formal preliminaries before the property could be sold, it can not be said that she intended to distribute before compliance. The several steps necessary to meet the requirements for sale by the trustee, including permission of the probate court to make partial distribu-

tion, procuring certified copies of documents authorizing her acts, and a tax release by the State Tax Commission, were all taken by the executrix with due dispatch, as set out in the findings of fact.

Bearing in mind the purpose of the distribution, and the fact of the executrix and trustee being the same person and that she was aware of the formalities to be complied with before her object could be accomplished, we are of the opinion that it was not until March 31, 1930, that there was any segregation of the stock from the corpus of the estate. On that date, and not before, the requirements of the situation had been met and the certificates were taken over by the trustee in that capacity, and that date we hold is the time of the distribution.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

McMAHON, dissenting: The order of the Probate Court of Hamilton County Ohio, as set forth in the majority opinion, entered on March 26, 1930, pursuant to section 10840, Page's Annotated Code of Ohio, as set forth in the majority opinion, is a valid adjudication in partial distribution in kind and is binding and conclusive upon us in this proceeding. This order, like all similar orders, rulings, decrees, and judgments of probate courts or other courts of record of similar character having jurisdiction of the subject matter, the administration and settlement of an estate, or any other matter involving property rights, and of the parties, can not be impeached collaterally. *Herron* v. *Dater*, 120 U. S. 464; [1] *Magruder* v. *Drury*, 235 U. S. 106; [2] *Freuler* v. *Helvering*, 291 U. S. 35; *Edward T. Blair*, 31 B. T. A. 1192; [3] *Commissioner* v. *Blair*, 83 Fed. (2d)

[1] In *Herron* v. *Dater* the Supreme Court stated in part:

"* * * It is scarcely necessary to cite authority in support of the proposition that the *orders, judgments and decrees of the Orphans' Court, in a case where it had jurisdiction of the subject-matter, cannot be impeached collaterally*; * * *. In *Dreishner* v. *Allentown Water Co.*, 52 Penn St. 225, 229, Mr. Justice Strong said: 'Orphans' Court decrees are doubtless conclusive. They cannot be impeached collaterally. * * *.'" [Emphasis supplied.]

[2] In *Magruder* v. *Drury*, the Supreme Court stated in part:

"It is well settled that the decree of the court which has acquired jurisdiction of an estate and settled an account cannot be *collaterally* attacked, *Jonison* v. *Hapgood*, 7 Pickering, 1, 7. * * *" [Emphasis supplied.]

[3] In *Edward T. Blair* we stated in part:

"In *Freuler* v. *Helvering*, 291 U. S. 35, the Supreme Court held that * * * the decision of a court of the State of California having jurisdiction of the trust in an action brought by the trustee for approval of his account is *binding.* * * * it also held that *it constituted an adjudication of the property rights of the beneficiaries which must be considered in determining the Federal income tax liability of the beneficiaries.* The Supreme Court stated in part:

"Moreover, the decision of that court, until reversed or overruled, establishes the law of California respecting distribution of the trust estate. It is none the less a declaration of the law of the state because not based on a statute, or earlier decisions. The rights of the beneficiaries are property rights and the court has adjudicated them. What the law as announced by that court adjudges distributable, is, we think, to be so considered in applying section 219 of the Revenue Act of 1921.

655,[4] reversing *Edward T. Blair, supra*, on another ground; and *Cincinnati, S. & C. R. Co.* v. *Village of Belle Centre*, 27 N. E. (Ohio) 464.[5]

The principles of the above cases which deal with orders, ruling, judgments, or decrees of probate or similar courts are, in this respect, in consonance with the well settled rule of law governing the adjudications of courts of record having other jurisdiction; a collateral attack can be successful only to the extent that it discloses a lack of power, jurisdiction, or fraud as distinguished from mere error in the exercise of power, *Johnson* v. *Manhattan Railway Co.*,

---

"It is well settled that the decision of a state court of competent jurisdiction upon property rights as between the parties to the proceeding in the state court is *conclusive* upon the Federal courts until it is reversed or overruled. *Freuler* v. *Helvering, supra; Utterhart* v. *United States*, 240 U. S. 598; *Hubbell* v. *Helvering, supra;* and *Commissioner* v. *Field*, 42 Fed. (2d) 820, affirming *Marshall Field*, 15 B. T. A. 718, * * *." [Emphasis supplied.]

[4] In *Commissioner* v. *Blair* the Circuit Court stated in part:

"Although there are these distinctions between the *Freuler* case and the instant one, we accept it as authority for holding that a final decree of a state court, *supreme or inferior*, entered in *a specific matter* such as the interpretation of rights under a testamentary trust, is binding upon a Federal court in determining the character of a trust, the income from which is the subject of a Federal tax.

"The logic supporting the adoption of such a rule is the same as that which furnishes the basis of *res judicata. We are adopting the ruling of a court having jurisdiction of the subject matter and of the person.* The orderly administration of justice and final settlement of property rights will be promoted by so doing. *It is true that this court has previously reached a contrary conclusion—that the trust was a spendthrift one—but our decision was before the Illinois court had declared itself in reference to a matter to which its jurisdiction extended.* Moreover, the previous proceeding in this court was one to which the beneficiaries were not a party, whereas they were the parties to the state court proceeding.

"*     *     *     *     *     *     *     *     * The final decision of such a court, *which is not appealed from*, is *binding* upon the Federal court for the purpose of determining the character of the trust which in turn may be determinative of a Federal income tax assessment. * * *" [Emphasis supplied.]

[5] In *Cincinnati, S. & C. R. Co.* v. *Village of Bell Centre*, the Supreme Court of Ohio stated in part:

"The probate court is empowered by the constitution, in addition to its jurisdiction in probate and testamentary matters, and others expressly enumerated, to take such other jurisdiction as may be provided by law. * * * *It is clear, therefore, that if the probate court had jurisdiction of the parties, and of the property involved, its judgment established the right of the village to enter upon and hold the property thus appropriated, and to subject it to the proposed uses,* and must necessarily operate to defeat the plaintiff's action; *for such a judgment, until reversed, is final and conclusive between the parties, and cannot be collaterally impeached.* This we do not understand to be seriously controverted. The contention of the plaintiff here is that the probate court, in the appropriation proceedings, acquired no jurisdiction, either over it or its property, * * *

"* * * It seems well settled that the *probate courts of the state are courts of record, competent to decide on their own jurisdiction, and exercise it to final judgment, and that their records import absolute verity. Shroyer* v. *Richmond*, 16 Ohio St. 455. The class of tribunals to which they belong, and the character of their jurisdiction, are aptly pointed out in the opinion of the court in the case just cited, in the following language: 'True, it [the probate court] is a court of limited jurisdiction, and it is equally true that the jurisdiction of each of the courts of the state is expressly limited, either by the constitution or by statute. But, as was said in the case of *Sheldon* v. *Newton*, 3 Ohio St. 500, "the distinction is not between courts of general and those of limited jurisdiction, but between courts of record, that are so constituted as to be competent to decide on their own jurisdiction, and exercise it to final judgment, * * *."

289 U. S. 479; [6] *Commissioner* v. *Blair, supra;* [7] and *Cincinnati S. &
C. R. Co.* v. *Village of Belle Centre, supra;* in Ohio, under the rule
of the latter case, "their records import absolute verity" to the
jurisdiction of its probate courts; and, there as elsewhere, a judicial
act performed in the exercise of a jurisdiction conferred by law,
even if erroneous, can be corrected only upon review on appeal or
otherwise and is not void or open to collateral impeachment. *Ex
parte Roe*, 234 U. S. 70; [8] and *Cincinnati S. & C. R. Co.* v. *Village of
Belle Centre, supra.*

There is no showing in the instant proceeding that the Probate
Court of Hamilton County, Ohio, did not have jurisdiction of the
subject matter, the estate, the executrix or the trustee (the distrib-
utee); there is ample showing to the contrary; and there is no
showing that collusion or fraud was committed in procuring the
order of the Ohio probate court. It may be added that, while the
order or decree of the probate court "was not unlike a consent
decree", it is binding here. *Commissioner* v. *Blair, supra.* This
order of that court has never been reversed upon review or other-
wise by any other court, nor has it been attacked in any other way
in any court of competent jurisdiction, so far as this record shows;
and no presumption to this effect can be indulged in. On the con-
trary, the parties before that court have procured and acquiesced
in the adjudication of that court and have acted upon it and in
pursuance of it, have benefited by it and, hence, are estopped to
question its validity. *Sanborn* v. *Sanborn*, 140 N. E. (Ohio) 407, [9]

---

[6] In *Johnson* v. *Manhattan Ry. Co.* the Supreme Court stated in part:
"* * * In these circumstances it is plain that the attack was *collateral.* And, this
being so, there was need for heeding the familiar rule that such an attack can be success-
ful *only where and to the extent that it discloses a want of power as distinguished from
error in the exertion of power* that was possessed." [Citing *Dowell* v. *Applegate,* 152
U. S. 327, 337–340; *Fauntleroy* v. *Lum,* 210 U. S. 230, 237; *Ex parte Roe,* 234 U. S. 70,
72, *Marin* v. *Augedahl,* 247 U. S. 142, 149, 152.] [Emphasis supplied.]
[7] In *Commissioner* v. *Blair* the Circuit Court stated in part:
"* * * In other words it was not unlike a consent decree. But *consent decrees are
binding if entered by a court of competent jurisdiction with the parties properly before it,
in the absence of a showing of collusion between the parties or fraud upon the court.
* * *"* [Emphasis supplied.]
[8] In *Ex parte Roe* the Supreme Court stated in part:
"Whether the ruling was *right or wrong,* it was a *judicial act,* done in the exercise of a
*jurisdiction conferred by law,* and *even if erroneous,* was *not void or open to collateral
attack,* but only subject to *correction* in an appropriate *appellate* proceeding. *Chesapeake
& Ohio Railway Co.* v. *McCabe,* 213 U. S. 207; *In re Metropolitan Trust Co.,* 218 U. S.
312. * * *"* [Emphasis supplied.]
[9] In *Sanborn* v. *Sanborn,* the Supreme Court of Ohio stated in part:
"The latest and most authoritative declaration of principles upon facts which find a
striking parallel is the case of *Hopper* v. *Nicholas,* 140 N. E. 186, just decided by this
court and reported concurrently herewith, in which it was decided that proceedings in
New York state, *though unauthorized,* in which parties participated to their substantial
advantage, create an estoppel which will be a bar to subsequent proceedings, in which a
different conclusion is sought in the State of Ohio." [Emphasis supplied.]

and 34 C. J. 510, sec. 814.[10]  The ruling laid down by these authorities, in this respect is analogous to the rule that he who avails himself of the benefits of a legislative act can not thereafter successfully challenge the power of the legislative body to enact the legislation invoked. *F. L. Bateman*, 34 B. T. A. 347, and cases cited therein at page 21, footnote 29. Hence, the adjudication of that court can not be attacked *collaterally* in any court, or in a proceeding before this Board. This is true even if the court committed an error in designating the distributee, which it is not necessary to here decide. There is no occasion, much less justification, for here speculating as to whether another Ohio court would have reversed the probate court upon review, under all of the peculiar facts and circumstances of the procuring of, issuing of, acquiescence in and compliance with, the order of the probate court, as here disclosed. However, we may say, in passing, that if the probate court did commit an error it was a harmless error, and it has been held that a harmless error is not a ground for reversal. *Chicago & N. W. Ry.* v. *Gray*, 237 U. S. 399.[11]  It may be further added that the error, if any, is harmless because even if the court's designation of the distributee was erroneous, it does not detract from the validity of the remaining provisions of the order, those remaining provisions being sufficient to constitute a valid order of partial distribution. If the words "to herself as trustee under the Will of Charles P. Taft, deceased", the inclusion of which is at most a mere irregularity, were stricken from the order its remaining provisions would be valid and constitute an adequate order of distribution. To the extent of its jurisdiction over the subject matter a court's adjudications are partially valid. 34 C. J. 510, sec. 812;[12] *Dreyer* v. *Bigney*, 8 Ohio Dec. (Reprint) 562;[13] and *Audas* v. *Highland Land & Bldg. Co.*, 205 Fed. 862. This is akin to the rule in Ohio and elsewhere that a judgment may be valid as to some even though not

---

[10] In 34 C. J. at p. 510, sec. 814, it is stated:
"* * * the generally accepted doctrine is that the party who would have a right to avoid the judgment may give it validity by his acceptance and ratification of it, or be estopped by his conduct to impeach its validity. [Citing, among other cases, *Blanchard* v. *Gregory*, 14 Oh. 413.] And this he does by accepting or sharing in the fruits or benefits of the judgment * * *." [Citing, among other cases, *Dreyer* v. *Bigney*, 8 Oh. Dec. (Reprint) 562.]

[11] In *Chicago & N. W. Ry.* v. *Gray*, the Supreme Court stated in part:
"* * * But we find it unnecessary to express an opinion upon the argument since if there was an error it seems to have done the railway company no harm."

[12] In 34 C. J. at p. 510, sec. 812, it is stated:
"* * * As to jurisdiction of the subject matter, it seems that, although the judgment may go beyond the issues and grant relief not asked for, or not within the competence of the court, yet it may be good for so much as the court had power and authority to include in it."

[13] In *Dreyer* v. *Bigney*, the Ohio court stated in part:
"* * * if it [the decree] was irregular as to the amount found in favor of Mrs. McGill, it did not invalidate the other portions. * * *."

as to all defendants. 33 C. J. 1130, sec. 77.[14] Such words are, at most, mere surplusage, since the trustee was the only distributee. Too, she is not even named in this quoted language of the order. The majority opinion, in effect, recognizes the partial validity of the order in reaching the conclusion there reached, since it does not hold that there was no valid distribution.

Since we should accept the order of the Probate Court of Hamilton County, Ohio, as conclusive and binding upon us, the instant proceeding is governed by *Harwood Robbins*, 33 B. T. A. 880; *Emma W. Davis*, 32 B. T. A. 943; and *William R. Huntley*, 30 B. T. A. 931. In each of those cases we were concerned with the identical provision of the statute here involved, namely, section 113 (a) (5) of the Revenue Act of 1928. In those cases we held that the effective date of the order of distribution of the court having jurisdiction of the subject matter was "the time of the distribution" within the meaning of that section. In the interests of brevity we forego restating here the reasons there set forth in support of those decisions. They establish well a sound, fair, workable rule and should be adhered to. In the instant proceeding the order of the probate court was effective forthwith, immediately.

As correctly pointed out in the majority opinion, "distribution" means the separation and segregation from the corpus of the estate so that the property distributed no longer forms any part of the estate, citing and relying upon *Willcuts* v. *Ordway*, 19 Fed. (2d) 217, also cited and relied upon in *Emma W. Davis, supra*. Furthermore, the phrase "the time of the distribution" has reference to the time at which the property is *delivered to or made available* for the use of the distributee. *Harwood Robbins, supra*.[15] Here the order of the Probate Court of Hamilton County, Ohio, effected a separation or segregation of the shares of stock in question from the corpus and made such shares available to the trustee, the only distributee entitled to them. The order of March 26, 1930, removed all restraint on the executrix and trustee in the matter of distributing this stock. Thereafter she, as executrix, had the power and duty to deliver and she, as trustee and distributee, had the right to immediately demand, receive, and receipt for the stock in question. In

---

[14] In 33 C. J. at p. 1130, sec. 77, it is stated:

"* * * a judgment may be valid and enforceable as to one or some of defendants, although voidable or void as to others. * * *" [Citing, among other cases, *Johnson* v. *Pomeroy*, 31 Oh. St. 247; *Newburg* v. *Munshower*, 29 Oh. St. 617, 23 Am. R. 769; *Ash* v. *McCabe*, 21 Oh. St. 181; *Douglass* v. *Massie*, 16 Oh. 271, 47 Am. D. 375.]

[15] In *Harwood Robbins* we stated in part:

"The phrase 'the time of the distribution' as used in the 1928 Act must necessarily relate to the time at which the property is actually *delivered to or made available for the use of the distributee* or someone acting for him by the executors, administrators, or others having lawful possession or control thereof. See *Haskell* v. *Commissioner* (C. C. A., 3rd Cir.), 78 Fed. (2d) 869; certiorari denied —— U. S. ——, December 16, 1935. * * *" [Emphasis supplied.]

short, the stock then became *available* to her as distributee. The stock was even more readily *available* to her as distributee than was the property involved in *Harwood Robbins, supra, Emma W. Davis, supra,* and *William R. Huntley, supra,* because here she was executrix, trustee, and distributee; and since she, as executrix, already had possession of the stock, another delivery to herself, as trustee or distributee, was not necessary. Any other delivery would have been futile; and it is elementary that the law does not require that which is futile. What was thereafter done by her either as executrix, trustee, or distributee was only by way of getting the certificates in form to evidence, upon the books of the corporation, the passing of title. After the entry of the order of the court there was nothing to prevent her as trustee and distributee from selling the stock on the exchange, receiving the purchase price, and delivering the certificates endorsed in blank. What was done after the entry of the order was done to enable the purchaser to have transfer made on the books of the company and was done after there had been a segregation or distribution. Mere delay occasioned by effectuating the transfer on the books of the corporation should not be permitted to operate to give the distributee a more advantageous time for the fixing of the basis of the cost on a subsequent sale.

There is no valid escape from the final conclusion that in the instant proceeding "the time of the distribution" within the meaning of section 113 (a) (5) of the Revenue Act of 1928 was March 26, 1930, the date on which the Probate Court of Hamilton County, Ohio, entered its order of distribution.

In the instant proceeding the real controversy involves a limited question, which is that of "the time of the distribution" under the Revenue Act of 1928; and this arises in connection with a broader question, which is that of the determination of the basis of the stock in question for purposes of establishing gain or loss upon a sale made subsequent to the time, or date, of distribution. We are not here even concerned with the litigation of the title to the stock as between two or more alleged distributees or others. No such limited question was presented in any of the Ohio cases cited in the majority opinion. These cases are, for this and other reasons, not in point in the instant proceeding. These cases are further distinguishable in that here, and not there, the order was procured, acquiesced in, and complied with by the only parties interested, the executor, trustee, and distributee so far as the record shows, and, in fact, the same person acted in all these capacities; there is no showing of harm to anyone, and the order operated to the advantage of the trustee, whose successor is now before us as petitioner.

ARNOLD and TYSON agree with this dissent.